UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON BLADE, *et al.*, **)** | |
| **)** | |
| *Plaintiffs*, **)** | |
| **)** | |
| v. **)** | Case No. 20-cv-2591 (RDM) |
| **)** | |
| U.S. DEPARTMENT OF LABOR, **)** | |
| **)** | |
| *Defendant*. **)** | |
| **)** | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(c) and LCvR 7(h), the Department of Labor ("Defendant"), by and through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment in response to the Complaint filed by Washington Blade, *et al*. ("Plaintiffs").

**<u>INTRODUCTION AND SUMMARY</u>**

Plaintiffs commenced this action under the Freedom of Information Act, 5 U.S.C. § 552, et seq. ("FOIA"), seeking documents containing the words "religion" or "religious" from the office within the Department of Labor responsible for overseeing the Religious Exemption Directive in federal contracting and hiring.  The only issue before the Court is Defendant's deliberative process and attorney-client withholdings under FOIA Exemption 5.  As demonstrated below, Defendant is entitled to summary judgment because the withheld records reflect the predecisional and deliberative give and take of the agencies' decisionmaking processes as well as confidential legal advice shared between Agency staff and attorneys. Finally, Defendant is unable to release any non-exempt material because any such information is

extricably intertwined with information protected by Exemption 5 and disclosure would result in foreseeable harm to interests protected under FOIA.

## BACKGROUND

Plaintiffs submitted a FOIA request for "all emails to and from the persons in the roles of director, deputy director and director of policy including the words 'religion' or 'religious' from Jan. 20, 2017 to Aug. 30, 2019."  ECF No. 1 at 3 ¶ 9; *see also* Declaration of Kier Bickerstaff at 1 ¶ 2 ("Bickerstaff Decl.").  Plaintiffs "agreed to DOL's request to limit its search to the body of emails and not attachments."  Pl's Comp. at 3 ¶ 13.  "From December 10, 2020, to January 31, 2021, the Department produced responsive records on a rolling basis."  Bickerstaff Decl. at 1 ¶ 2. After a series of meet and confers, involving the exchange of a *Vaughn* index, resulting in Plaintiffs agreeing to limit that FOIA exemption challenges to Exemption 5, Defendant has determined that 360 records remain challenged.  *See* Bickerstaff Decl. at 1-2 ¶¶ 2-4.[1]

The Department of Labor's ("DOL") Office of Federal Contract Compliance Programs ("OFCCP") enforces Executive Order 11246, which charges the Secretary of Labor with ensuring that federal contractors "will not discriminate against any employee or applicant for employment because of race, creed, color, sex, sexual orientation, gender identity, or national origin."  *Carroll v. Office of Fed. Contract Compliance Programs*, 235 F. Supp. 3d 79, 81 (D.D.C. 2017).  When OFCCP has reasonable cause to believe that a federal contractor has violated the Executive Order, OFCCP "may issue a notice requiring the contractor to show cause" why enforcement proceedings are not warranted.  *Id*.  If the contractor's response is

---

[1]     *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (holding that an indexing system was necessary in FOIA cases to "(1) assure that a party's right to information is not submerged beneath governmental obfuscation and mischaracterization, and (2) permit the Court system effectively and efficiently to evaluate the factual nature of disputed information.").

unsatisfactory, OFCCP may refer the matter "to the Solicitor of Labor with a recommendation for the institution of administrative enforcement proceedings, which may be brought to enjoin violations, to seek appropriate relief, and to impose appropriate sanctions." *Id*.  The Executive Order contains an exemption for religious corporations, associations, educational institutions, and societies with regard to the employment of individuals of a particular religion to perform work connected with their activities. *See*

https://www.federalregister.gov/documents/2021/11/09/2021-24376/proposal-to-rescind-implementing-legal-requirements-regarding-the-equal-opportunity-clauses (visited January 19, 2023).

Of the 360 records withheld, Defendant has withheld portions of 351 documents pursuant to the deliberative process privilege. *See* Bickerstaff Decl. at 3 ¶ 6.  These documents "are part of the exchange of ideas and suggestions that accompanies all decisionmaking and reflects the preliminary assessment by DOL employees about issues on which they had to make recommendations and give advice." *Id*.  The release of these records "would undermine DOL's ability to foster the forthright, internal discussions, that are necessary for efficient and proper decision-making." *Id*.  Specifically, the records run the gamut of categories of documents ranging from information shared between Office of Legal Counsel ("OLC") and OFCCP regarding the interagency clearance process for summaries of draft legislation and Congressional Questions for the Record (QFRs) (some directed from Congress to then-Secretary Acosta);[2] discussion of policies, guidance, and other initiatives that OFCCP was at one time considering,

---

[2]    The interagency clearance process occurs when the agency proposing regulation can receive feedback from other agencies that may have equities involved, in order to arrive at a more complete proposal that avoids, to the extent possible, inadvertent negative effects on other agencies. *See*  Bickerstaff Decl. at 5.

but ultimately did not finalize, publish, or otherwise disseminate to the public.  *See* Bickerstaff
Decl. at 4.

Other categories are responses from other agencies to OFCCP during the clearance
process for OFCCP's Religious Exemption Notice of Proposed Rulemaking and published in
final form on August 10, 2018; DOL's internal deliberations prior to responding to constituent
groups; legal advice and deliberation of legal issues associated with the Religious Exemption
Directive, which is also protected by attorney-client privilege; agency deliberations regarding
responses to media and contractor representatives regarding the Directive; internal deliberations
amongst regional and national office staff regarding the settlement of enforcement actions
against two federal contractors; internal deliberations, and attorney-client-privileged
communications with legal counsel regarding how to respond to a FOIA request from a civil
rights organization, etc.  *See generally* Bickerstaff Decl.

For example, some of the withheld records are draft statements for press inquiries
regarding the Religious Exemption Directive prepared and circulated amongst DOL agencies,
including OFCCP.  *See* Bickerstaff Decl., Exhibit 2 ("Vaughn Index").  Draft statements were
sent to the Office of the Secretary for final review and comment and reflect the back-and-forth
discussions regarding what should be included or excluded before a final statement was
approved for responding to press inquiries.  *Id*.  Other withheld information were OFCCP's
request for legal advice from Civil Rights and Labor-Management Division ("CRLM"),
regarding issues associated with responding to a congressional inquiry from Senator Lankford.
*See* Vaughn Index.  This information was shared with CRLM personnel in order to obtain legal
advice.  *Id*.  The information was not disclosed to third parties outside of DOL and is protected
by both the deliberative and attorney-client privileges.  Still other records sought input from

4

various DOL agency employees regarding a draft White House executive order.  *Id.*  The

withheld material consists of the Office of Legal Counsel's ("OLC") interpretation of the White

House's request as well as the sections of the order that OLC considered potentially applicable to

DOL.  *Id.*  The records preceded DOL's decision regarding which sections of the proposed

Executive Order were relevant for review and what comments and concerns to raise regarding

the bill, consisting of DOL's preliminary assessment.

## STANDARD OF REVIEW

### a.  General Summary Judgment Standard

Where no genuine dispute exists as to any material fact, summary judgment is required.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  *Id.* at 247.  "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence

of evidence to support the non-moving party's case."  *Sweats Fashions, Inc. v. Pannill Knitting

Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).  In *Celotex Corp. v. Catrett*, the Supreme Court

held that, in responding to a proper motion for summary judgment, the party who bears the

burden of proof on an issue at trial must "make a sufficient showing on an essential element of

[his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

### b.  Summary Judgment Standard as Applied to FOIA Cases

FOIA cases are appropriately resolved at summary judgment.  *See Brayton v. Office of

U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  For purposes of summary judgment, an

agency's decision to withhold information from a FOIA requester is subject to *de novo* review by

the Courts.  *Hayden v. Nat'l Sec. Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979).

In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material

facts are in dispute and, if applicable, that each document that falls within the class requested has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980).

"Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition. The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden. The District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (internal quotations omitted).

An agency may defeat the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence, which show that the documents in question were produced or are exempt from disclosure. *Hayden v. NSA*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979); *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F.Supp.2d 62, 67 (D. D.C. 2001) (summary judgment in FOIA cases may be resolved solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). *See also Public Citizen, Inc. v. Dep't of State*, 100 F.Supp.2d 10, 16 (D. D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

<u>ARGUMENT</u>

**I.     DEFENDANT PROPERLY WITHHELD RECORDS UNDER EXEMPTION 5**

Under Exemption 5, agencies may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 incorporates the privileges that the Government may claim when litigating against a private party, including the governmental attorney-client and attorney work product privileges, the presidential communications privilege, the state secrets privilege, and the deliberative process privilege. *See Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006). It covers records that would be "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). To qualify as exempt under Exemption 5, "a document must meet two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008).

**a.     Defendant Properly Withheld Deliberative Records**

The governmental deliberative process privilege is one of the privileges covered by exemption 5. *See Sears, Roebuck & Co.*, 421 U.S. at 150; *EPA v. Mink*, 410 U.S. 73, 87 (1973); *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002). The privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (*quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeisee, Jena,* 40 F.R.D. 318, 324 (D.D.C. 1966)). It also protects other subjective information reflecting the author's personal opinions prior to agency adoption of a policy. *Judicial Watch, Inc. v. DOJ,* 306 F Supp.2d 58, 70 (D.D.C.

2004) (where the court found that handwritten notes a member of the Attorney General's staff made on an invitation were exempt from disclosure because they would reveal the factor that the staff member considered important, and how the decision to attend the event may have been reached). *See also Tax Analysts*, 294 F.3d at 80 (D.C. Cir. 2002) (where the court affirmed the lower court's decision to withhold from disclosure five Technical Assistance memoranda). Disclosing such documents could inhibit agency employees "frank discussion of legal or policy matters" leading to weaker decisions and policies. *Sears, Roebuck & Co.*, 421 U.S. at 150; *see also*, *Mink*, 470 U.S. at 87; *Tax Analysts*, 294 F.3d at 80. In determining whether the governmental deliberative process privilege protects information, the record or portion of a record must be both pre-decisional and deliberative in nature. *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).

In enacting Exemption 5, Congress determined that the disclosure of material that is pre-decisional and deliberative harms an agency's decisionmaking process. *See McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011). In a FOIA case, the court's role "is not to second-guess that Congressional judgment on a case-by-case basis." *Id.* Rather, "[t]here should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take – of the deliberative process – by which the decision itself is made.'" *Chemical Mfrs. Ass'n v. CPSC*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Vaughn v. Rosen*, 523 F.2d at 1144). The agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Chem. Mfrs. Ass'n*, 600 F. Supp. at 118 (quoting *NLRB v. Sears*, 421 U.S. at 151).

Exemption 5 is most often invoked for documents authored by officers or employees of a U.S. government "agency." *Klamath Water*, 532 U.S. at 8. For FOIA purposes, the term

"agency" is defined to mean, with certain exceptions not relevant here, "each authority of the Government of the United States."  5 U.S.C. §§ 551(1), 552(f)(1).  Because Congress defined "agency" to include only authorities of the U.S. Government, "intra-agency" and "inter-agency" are ordinarily read to refer only to documents created by officers or employees within the U.S. Government.  *Public Emps. for Envtl. Responsibility v. U.S. Section Int'l Water & Boundary Comm'n*, 740 F.3d 195, 201 (D.C. Cir. 2014).  In the course of its day-to-day activities, an agency often needs to rely on the opinions and recommendations of its own employees that is an integral part of its deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions.  *Ryan v. DOJ*, 617 F.2d 781, 789 (D.C. Cir. 1980).

Notes generally are selective and deliberative and routine public disclosure of meeting notes and other notes would hinder government officials from debating issues internally, deter them from giving candid advice, and lower the overall quality of the government decision making process.  *See, e.g., Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D. D.C. 1995) ("Disclosure of this type of deliberative material inhibits open debate and discussion, and has a chilling effect on the free exchange of ideas."), *aff'd*, 76 F.3d 1252 (D.C. Cir. 1996); *cf. Bureau of Nat'l Affairs, Inc. v. DOJ*, 742 F.2d 1484, 1494 (D.C. Cir. 1984) (recognizing possibility that notes might be withheld under Exemption 5 because of "the potential chilling effect that disclosure of handwritten notes might have on the activities of government employees").  The release of the records being withheld either in full or in part under FOIA Exemption 5 and the deliberative process privilege would cause "foreseeable harm" to the agency interests protected by the FOIA exemptions. *See Ctr. for Investigative Reporting v. U.S. Customs & Border Patrol*, 436 F. Supp. 3d, 106 (D.D.C. 2019).

As set forth above, the documents withheld here fall into a variety of categories of internal deliberations pertaining to responses to congressional inquiries and specific congressional questions for the record (QFRs), deliberations about advise to be given to former Secretary Acosta about press inquiries, responses to constituents and advocacy groups, etc.  *See generally* Bickerstaff Decl. and Vaughn Index.  For example, one of the records withheld was an email communication from the Office of the Secretary to an OFCCP official regarding draft responses to questions for the record (QFRs) prepared by [then-]Secretary Acosta's office about various DOL issues, rulemaking, compliance efforts, and initiatives.  *See* Vaughn Index, Bates No. DL001022-DL001023.  The responses to the QFR was in draft stages prior to it being finalized, and any information pulled from the draft document in order to assess which topics should be discussed in the QFR and for the purpose of finalizing the response to the QFR would enjoy the same treatment as the draft QFR.  *Id.*  Moreover, because the withheld material was used to decide what to include in the final version of the QFR, it is pre-decisional and deliberative and thus protected by the deliberative process privilege of Exemption 5.  *Id.*  It is well-settled in this jurisdiction that agency deliberations about "how to respond to questions from Congress about matters of agency policy qualify as deliberative and predecisional." *Judicial Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 115-16 (D.D.C. 2018); *see also Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 119-20 (D.D.C. 2014) (finding exempt from disclosure records involving "how to communicate with members of Congress" and how to "prepare for potential points of debate or discussion"); *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (deeming exempt under the deliberative process privilege records that "discuss[ed] how to respond to inquiries from the press and Congress"); *Judicial Watch, Inc. v. DOJ*, 306 F. Supp. 2d 58, 71-72 (D.D.C. 2004) (protecting

communications prepared to assist an agency head for congressional testimony).  In addition to records in Category A, this rationale would also protect Category K and L records pertaining to discussion between DOL staff and Senator Lankford's office and other members of Congress. *See* Bickerstaff Decl. at 7-8; *see also* Vaughn Index, Bates No. DOL00506-DOL 000521.

Another category of withheld records, Category J, *see* Bickerstaff Decl. at 6, are opinions expressed by a Deputy Director of OFCCP to the Director regarding a report requested by the Office of Management and Budget, where the subordinate is expressing an opinion and recommendation regarding the format and structure of the proposed OFCCP statement outlining policies OFCCP was establishing in response to Executive Order 13777, and allowing the Director to make a decision regarding whether or not to move forward with this method.  *See* Vaughn Index, Bates No. DOL 000205.  These discussions, which occurred prior to OFCCP finalizing its report, assisted OFCCP with making a final decision regarding what information to include in the report and whether the prepared statement was appropriate.  *Id*.  It is clear, for example, that communications between the CFPB and White House staff may be "inter-agency or intra-agency memorandums" for the purposes of Exemption 5's deliberative process privilege. *Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 10-12 (D.D.C. 2014) (summary judgment should be granted with respect to the withholding internal communications as part of an Executive Branch decision-making process regarding Congressional hearings under the deliberative process privilege, 5 U.S.C.S. § 552(b)(5)); *see also* Vaughn Index, DOL00206-DOL00211.

Also withheld were discussion of policies, guidance, and other initiatives that OFCCP was at one time considered.  *See* Bickerstaff Decl. at 4.  One example of such withholdings are communications between a Compliance Officer and the Director of Enforcement where the

subordinate expressed an opinion about how two new policy directives that OFCCP issued may impact cases. *Id.*; *see also* Vaughn Index 001163-001165. Correspondence that reflect different considerations, opinions, options, and approaches for addressing various issues that could be raised and require a response that are crafted by lower-level personnel for potential use by higher-level officials, particularly directors are protected under the deliberative process privilege. *Leopold v. Office of the Dir. of Nat'l Intelligence*, 442 F. Supp. 3d 266, 284 (D.D.C. 2020); *Sack v. DOJ*, 138 F. Supp. 3d 10, 13 (D.D.C. 2015).

"The Religious Exemption Directive, Religious Exemption Notice of Proposed Rulemaking, and related guidance that were prepared received significant media attention and resulted in inquiries from the public and congressional members. When reviewing such highly sensitive matters, it is critical that the processes for reviewing these matters are protected and agency personnel have the liberty of engaging in the free discussion and exchange of ideas that would allow the agency to arrive at the best decision." Bickerstaff Decl. at 13 ¶ 9. Agency deliberations regarding how to address various questions from news media and contractor representatives regarding the Religious Exemption Directive after it was published were likewise properly withheld under Exemption 5. These documents squarely fall within the ambit of Exemption 5's deliberative process privilege "[b]ecause these documents reflect intra-agency deliberations on communications with the media." *Freedom Watch, Inc. v. NSA*, 49 F. Supp. 3d 1, 8 (D.D.C. 2014), *aff'd and remanded*, by 783 F.3d 1340 (D.C. Cir. 2015); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (finding that agency properly withheld under Exemption 5 "email messages involving recommendations and evaluations for how to respond to Congressional and media requests[.]").

Category V records, *see* Bickerstaff Decl. at 11, regarding media "rollouts" should be similarly protected under Exemption 5.  *See e.g.* Vaughn Index DOL002811-002816.

To summarize, OFCCP has withheld information associated with various categories of records that formed parts of its processes for addressing various issues within its purview related to highly sensitive matters that OFCCP and CRLM personnel were asked to opine on or establish policies and guidance.  *See* Bickerstaff Decl. at 13 ¶ 8.  As demonstrated above, records associated with OFCCP's establishment of guidance and policies regarding the religious exemption consisting of the Religious Exemption Directive, Religious Exemption Notice of Proposed Rulemaking, and review of associated comments, fact sheets, talking points, press releases, FAQs, and other internal documents to assist with responding to any questions that may come in from stakeholders or media organizations, were part of the critical process that allowed OFCCP to determine how it should interpret the religious exemption and how to apply it in various factual scenarios were properly withheld under Exemption 5's deliberative process privilege.

Moreover, although purely factual information is generally not protected under the deliberative process privilege, such information can be withheld when "the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations."  *In re Sealed Case*, 121 F.3d at 737.  Such information is protected in order to avoid allowing "the reader to probe too deeply into the thought processes of the drafters" and thus to avoid "a chilling effect on communication between agency employees regarding similar projects and the future."  *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 204 (D.D.C. 2007).  Thus, factual material is protected under the deliberative process privilege when disclosure would "expose an agency's decision-making

13

process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Quarles v. Department of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990).  Thus, such material is protected because "Exemption 5 was intended to protect not simply deliberative material, but also the deliberative process of agencies." *Montrose Chemical Corp. of Ca. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974).  The Bickerstaff Decl., taken in total, makes clear that the withheld Exemption 5 information is so "inextricably intertwined" with the none deliberative and attorney-client protected information, that disclosure would have a chilling effect on the interests protected by Exemption 5 and segregation would leave unintelligible scraps of information.  *See* Bickerstaff Decl. at 15.

       **b.**      **DOL Correctly Withheld Attorney-Client Records under Exemption 5**

Exemption 5 plainly applies to agency records protected by the attorney-client privilege. *See Coastal States*, 617 F.2d at 862; *NLRB v. Sears*, 421 U.S. at 154.  The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).  The privilege "fully applies to communications between government attorneys and the government officials and agencies to which they render legal service." *N.Y. Times Co. v. DOJ*, 282 F. Supp. 3d 234, 237 (D.D.C. 2017) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)).  A government agency "needs the . . . assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." *Coastal States*, 617 F.2d at 863.

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts*, 117 F.3d at 618.  "The privilege also protects communications from attorneys to their clients if the

communications rest on confidential information obtained from the client." *Id*. "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Id*. (explaining that attorney-client privilege applies when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors"). Elements of the privilege in the FOIA context are: (1) a client; (2) a member of the bar or his subordinate acting in his or her capacity as a lawyer; (3) confidentiality and for the purpose of securing legal advice; and (4) the privilege has been claimed and not waived by the client. *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).

Here, DOL's claims fall squarely within these parameters. Generally, OFCCP sought advice and counsel from Civil Rights and Labor Management relating to various issues under the presumption that the information discussed between it and its legal counsel would remain confidential. *See* Bickerstaff Decl. at 13-14. In doing so, OFCCP engaged in candid discussions with CRLM regarding various issues to ensure that it arrived at the correct legal conclusion and engaged in appropriate action when addressing each issue. *Id*. The information categorized as being protected by the attorney client privilege was only shared internally amongst DOL employees. *Id*. The records withheld in Category C consists of OFCCP (client) and Civil Rights and Labor Management (attorney) deliberations "regarding the appropriate standard of review for assessing compliance with religious accommodation protections under Executive Order 11246 and the Americans with Disabilities Act (some of which is also protected by attorney-client privilege)." Bickerstaff Decl. at 4.

Other records withheld in Category H are hybrid deliberative and attorney-client records reflecting internal deliberation as well as deliberation regarding initial drafts of FAQs that

15

OFCCP was considering issuing along with the final rule.  *Id*. at 5-6.  This category also included requests for legal advice and deliberation of legal issues associated with the Directive, which is also protected by attorney-client privilege.  *Id*.  Category N is another hybrid of internal deliberations and communications with legal counsel regarding how to respond to a FOIA request that it received from a civil rights organization.  *Id*. at 8; *see also id*. at 9 Category Q. More specifically, in Bates No. DOL002992, Defendant withheld portions of internal communications between a CRLM attorney and OFCCP regarding a draft document about the religious exemption regarding whether certain facts should be included in the document and other factors that CRLM should consider when revising the document.  *See* Vaughn Index. Bates No. DOL003023 is protected by the attorney client privilege because "it was utilized by CRLM to provide legal advice about issues raised within the draft document as well as to determine if the document was legally sufficient.  This information was not shared with entities outside of the Department."  *See id*.

As indicated earlier, the privilege applies only to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance."  *Fisher v. United States*, 425 U.S. 391, 403, (1976).  Courts have applied the attorney-client privilege in the FOIA context to protect legal advice from agency attorneys to agency investigators concerning the legal parameters of third-party conduct.  *See, e.g.*, *Touarsi v. DOJ*, 78 F. Supp. 3d 332, 345 (D.D.C. 2015) (concluding the DOJ's assertion of "the attorney-client privilege to withhold legal advice from FBI attorneys to government agents and employees concerning investigation strategies and a potential prosecution"); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec*., 736 F. Supp. 2d 202, 209 (D.D.C. 2010) (applying attorney-client privilege to protect the withholding of "email messages from a [DHS] special agent to a DHS OIG attorney seeking confidential legal advice regarding

the way in which [a Mexican national] entered into the United States"). Thus, there can be little doubt that Exemption 5 attorney-client privilege is proper when the exempted material "contains a communication between a[n] [agency] employee and a[n] [agency] attorney seeking legal review and advice." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 65 (D.D.C. 2015). Or where an email exchange involves a "request[ ] for and the provision of legal advice in the context of an attorney-client relationship." *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 207 (D.D.C. 2007); *Judge Rotenberng Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47 n4 (D.D.C. 2019) (finding records properly withheld under attorney-client privilege include communications between FDA staff and agency attorneys within FDA's OCC.").

Where, as here, DOL's affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the attorney-client privilege, and is not controverted by either contrary evidence in the record nor by evidence of agency bad faith, the privilege applies. *Cornucopia Inst. v. Agric. Mktg. Serv.*, 312 F. Supp. 3d 85, 95 (D.D.C. 2018) (concluding that enforcement questions posed by the "attorneys" in the "Office of General Counsel" are protected under the attorney-client privilege); *Exxon Corp. v. Department of Energy*, 585 F. Supp. 690, 770 (D.D.C. 1983) (a confidential memorandum from an attorney advisor to a deputy regional administrator containing the author's legal advice and recommendations regarding an enforcement action is protected under Exemption 5).

Defendant's withholding fall into the categories set forth above that this Court has found to be protected under Exemption 5 attorney-client privilege. The withheld records pertained to legal advice regarding standard of review, proper guidance for the then-recently promulgated

Religious Exemption Directive as well as potential enforcement action that fall within the jurisdiction of the OFCCP.  Accordingly, the withholdings were proper.

### c.   Defendant has Demonstrated Foreseeable Harm

For many privileges and doctrines, to demonstrate foreseeable harm, the government must establish that disclosure would harm "debate and candid consideration of alternatives within an agency," *Jordan v. DOJ*, 591 F.2d 753, 772 (1978) (*en banc*), *overruled on other grounds* by *Crooker v. BAFT*, 670 F.2d 1051, 1053 (D.C. Cir. 1981) (en banc), by for example, disclosing information that would "chill deliberations," *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020).  Indeed, "experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking [*5]  process." *Sears, Roebuck & Co*., 421 U.S. at 150-51 (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974)).  An agency need show only that it "reasonably foresees . . . harm [to] an interest protected by" the exemption at issue.  5 U.S.C. § 552(a)(8)(A)(i)(I). So long as the agency "specifically focused on 'the information at issue' . . . under review, and it concluded that disclosure of that information 'would' chill future internal discussions", the court can conclude that "[t]he agency correctly understood the governing legal requirement and explained why it was met." *Sears, Roebuck & Co*., 421 U.S. at 150-51.

As in *Machado Amadis*, DOL has satisfied the "governing legal requirement" here.  971 F.3d at 371  Both the Bickerstaff Decl. and attached Vaughn Index repeatedly make it plain generally that "[d]isclosure of this information would cause foreseeable harm by chilling candid written deliberation via email regarding how to properly evaluate religious accommodation claims within the context of OFCCP's compliance evaluation process, resulting in less accurate and potentially confusing information ultimately being disseminated to complainants who have

filed such claims with OFCCP."  Bickerstaff Decl. at 4.  In another category of records, Defendant avers that disclosure would "chill[] its ability to communicate regarding how best to respond to inquiries from Congress, and requiring disclosure of initial drafts of QFRs, before they have been reviewed and revised by Departmental leadership, would stymie DOL's process for delegating draft responses to various agencies, resulting in a more cumbersome process and likely resulting in less comprehensive and accurate responses to Congress."  *Id*. at 5.  In all categories of withheld records, disclosure "would" likely chill honest, robust, and fulsome dialogues that serves the agencies, Congress', and the citizenry's interests.  See *Tobias v. Dep't of Interior*, 2021 U.S. Dist. Lexis 178112 **5-6 (D.D.C. 2021) (disclosure of predecisional and deliberative documents "would have a chilling effect on discussions within the agency . . . thereby impairing the integrity of the agency's decision-making process"")"; *See Machado Amadis*, 971 F.3d at 371 ("[C]hilling of candid advice is exactly what the privilege seeks to prevent.").  Thus, DOL has satisfied FOIA foreseeable harm requirement.

### d.     Defendant has Released all Reasonably Segregable Information

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. DOJ*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to

disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, "DOL Conducted a line-by-line review of each page that was determined to be responsive to the request and that was produced to the Plaintiff to determine if portions of the records were releasable. DOL completed this segregability analysis when initially producing the responsive information and prior to re-releasing additional records on June 15, 2022." Bickerstaff Decl. at 15.  "DOL further considered whether factual information could be segregated from information subject to the deliberative process privilege and the attorney client privilege." *Id*. After evaluating each record, DOL determined that the factual information contained within the withheld information was too inextricably intertwined with the deliberative material or the information protected by the attorney client privilege to be releasable in a form that would not result in incomplete, fragmented, unintelligible sentences composed of isolated meaningless words." *Id*.  An agency need not commit significant time and resources to the separation of disjointed words, phrases, or sentences that would provide minimal informational content.  *See Schoenman v. FBI*, 763 F. Supp. 2d 173, 176 (D.D.C. 2011).  Thus, DOL is entitled to summary judgment on this issue also.

## **CONCLUSION**

For the foregoing reasons, the Court should granted Defendant's motion for summary judgment.

January 23, 2022                    Respectfully submitted,


                                    MATTHEW M. GRAVES, D.C. Bar #481052
                                    United States Attorney

                                    BRIAN P. HUDAK
                                    Chief, Civil Division

                                    By: _____/s/_____
                                    KENNETH ADEBONOJO
                                    Assistant United States Attorney
                                    United States Attorney's Office-DC
                                    601 D Street, N.W. B Civil Division
                                    Washington, D.C.  20530
                                    Telephone: (202) 252-2562