UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON BLADE, et al<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR,<br>*Defendant*. | Case No. 20-cv-2591 (RDM)<br><br>**DECLARATION OF KEIR BICKERSTAFFE** |

I, Keir Bickerstaffe, declare as follows:

1. I am currently employed as the Counsel for Interpretation and Advice in the Civil Rights and Labor-Management Division (CRLM) of the Office of the Solicitor (SOL) of the United States Department of Labor (DOL). I have been employed in this position since October 2014. In this position, I provide legal counsel to the Office of Federal Contract Compliance Programs (OFCCP) on policy, regulatory, and Freedom of Information Act (FOIA) matters. In connection with my official duties and responsibilities, I am familiar with the procedures OFCCP employs for responding to requests for information pursuant to the provisions of the Freedom of the Information Act ("FOIA") and am familiar with OFCCP's processing of the FOIA request associated with lawsuit.

2. On August 29, 2019, Mr. Johnson filed a FOIA request, via email and on the behalf of Washington Blade ("The Plaintiffs"), to DOL's Office of Federal Contract Compliance Programs seeking "all emails to and from the persons in the roles of director, deputy director and director of policy including the words 'religion' or 'religious' from Jan. 20, 2017 to Aug. 30, 2019." *See* Ex 1. From December 10, 2020, to January 31, 2021, the Department produced responsive records on a rolling basis. After preparing an initial *Vaughn* index which was produced to Plaintiff on April 13, 2021, Defendants re-reviewed the responsive records and reproduced 337

1

pages of responsive records on June 15, 2022, which it determined there was no foreseeable harm in disclosing.

3. Plaintiff subsequently notified DOL on June 16, 2022, that it would not challenge certain records contained in DOL productions.[1] Plaintiff indicated, however, that they reserved the right to challenge Defendant's exemption 5 withholding in other produced records.

4. The purpose of this declaration is to provide the Court with information regarding DOL's withholdings as elaborated upon in the attached *Vaughn* index. *See* Ex. 2. Because Plaintiff has indicated that they do not seek to challenge non-Exemption 5 redactions, this declaration and the *Vaughn* index will be limited to explaining DOL's assertion of the deliberative process privilege and the attorney client privilege of Exemption 5 within 360 documents.[2] The statements contained in this declaration are based on my personal knowledge and experience, review of documents kept in the normal course of business, and information provided to me in my official capacity by other individuals in DOL.

## II. Withholding Pursuant to Exemption 5 of the FOIA

### i. Deliberative Process Privilege

5. FOIA Exemption (b)(5), 5 U.S.C. § 552(b)(5), permits the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Exemption 5 allows an agency to exempt information that is normally privileged in the civil discovery context. These privileges include the pre-decisional, deliberative process privilege; the attorney work product privilege; and the attorney-client privilege.

---

[1] The unchallenged records consist of: Bates Nos. 285–292, Bates Nos. 302–317, Bates Nos. 337–375, Bates Nos. 388–393, Bates Nos. 732–747, Bates Nos. 1024–1044, Bates No. 1304, Bates Nos. Records 1489–1514, Bates Nos. 1517–1520, Bates Nos. 1575–1601, Bates Nos. 1602–1607, Bates Nos. 1608–1652, Bates Nos. 1892–1899, Bates Nos. 1961–1977, and Bates Nos. 3232.

[2] After removing explanations for records which were released on June 15, 2022, and the records that Plaintiff indicated they did not seek to challenge, DOL has determined that 360 records remain challenged.

6. As described in the *Vaughn* Index, DOL has withheld portions of 351 documents pursuant to the deliberative process privilege that consist of communications between Department officials regarding various matters. The communications that were exchanged between various OFCCP personnel, including but not limited to OFCCP Directors (including those Acting in the role), OFCCP Deputy Directors, OFCCP Compliance Officers, Directors of OFCCP divisions, Section Chiefs within various divisions, as well as communications with various DOL agencies including the Office of the Solicitor, the Office of Public Affairs, and the Office of the Assistant Secretary for Policy, to name a few, formed a part of the Department's deliberation over various matters that it had to address. These communications were part of the Department's deliberations about various topics, including but not limited to how to prepare Questions for the Records, and deliberations about proposed legislation, inquiries from Congress and the public, and directives. As described in further detail in the *Vaughn* index these documents, including any drafts of documents contained within the emails, are part of the exchange of ideas and suggestions that accompanies all decisionmaking and reflects the preliminary assessment by DOL employees about issues on which they had to make recommendations and give advice. These communications also form part of OFCCP's processes for decisionmaking and releasing them would undermine DOL's ability to foster the forthright, internal discussions, that are necessary for efficient and proper decision-making.[3]

7.   When determining whether releasing the withheld information would cause foreseeable harm, I categorized the challenged records into categories of discrete types of information for the purposes of describing the harm that would result if the withheld information

---

[3] Please reference the *Vaughn* index for further details regarding DOL's rationale for withholding portions of each discrete document.

was disclosed. These categories are noted next to each document in the *Vaughn* index and elaborated upon below. Specifically:

    a.    Category A consists of information shared with OFCCP through the DOL interagency clearance process by its Office of Legal Counsel (OLC), specifically summaries of draft legislation and Congressional Questions for the Record (QFRs), as well as OFCCP's initial drafts of feedback in response to one of these clearance items regarding the proposed Equality Act. OLC operates as a clearinghouse within DOL for receiving legislative and other Congressional materials that are submitted to federal agencies for their feedback and clearance. OLC in turn disseminates these materials to the appropriate agencies for review. The withheld material includes deliberations within the Department regarding which portions of the clearance items may impact agencies within DOL, the extent of that impact, and non-final agency suggestions for proposed changes to the clearance items. Disclosure of this information would foreseeably harm OLC's ability to provide necessary context to DOL agencies to facilitate the clearance process, and would foreseeably harm DOL generally by chilling candid written deliberation about the issues raised by the clearance items, thus preventing carefully considered and accurate feedback in response.

    b.    Category B consists of OFCCP's deliberation in response to questions raised about the scope and applicability of Executive Order 13777, Enforcing the Regulatory Reform Agency, to OFCCP regulations and proposed regulations. The withheld information includes discussion about possible actions OFCCP could take to comply with E.O. 13777 and draft responses that were non-final and subsequently revised. Disclosure of this information would cause foreseeable harm to OFCCP by chilling candid written deliberation via email about how to comply with issued Executive Orders.

    c.    Category C consists of OFCCP and CRLM deliberation regarding the appropriate standard of review for assessing compliance with religious accommodation protections under Executive Order 11246 and the Americans with Disabilities Act (some of which is also protected by attorney-client privilege), and deliberation over the ways in which OFCCP could

assess contractor compliance. Disclosure of this information would cause foreseeable harm by chilling candid written deliberation via email regarding how to properly evaluate religious accommodation claims within the context of OFCCP's compliance evaluation process, resulting in less accurate and potentially confusing information ultimately being disseminated to complainants who have filed such claims with OFCCP.

        d.      Category D consists of discussion of policies, guidance, and other initiatives that OFCCP was at one time considering, but ultimately did not finalize, publish, or otherwise disseminate to the public. Requiring disclosure of this information would cause foreseeable harm because it would chill the agency from written deliberation over a wide spectrum of possible policies, guidance, and initiatives to determine which ones are feasible and should be pursued, and which ones are not. Further, disclosure could also cause confusion over which policies, guidance, and initiatives were finalized and published by OFCCP.

        e.      Category E consists of deliberations regarding how to respond to Questions for the Record (QFRs) sent by Congress to Secretary Acosta that pertained to OFCCP, and initial draft responses by OFCCP staff to those QFRs. Requiring disclosure of the deliberation regarding these responses would foreseeably harm OFCCP by chilling its ability to communicate regarding how best to respond to inquiries from Congress, and requiring disclosure of initial drafts of QFRs, before they have been reviewed and revised by Departmental leadership, would stymie DOL's process for delegating draft responses to various agencies, resulting in a more cumbersome process and likely resulting in less comprehensive and accurate responses to Congress.

        f.      Category F consists of responses that OFCCP received from other agencies during the clearance process for OFCCP's Religious Exemption Notice of Proposed Rulemaking, and OFCCP's deliberations about how to respond to these comments. The interagency clearance process is well-established, through which the agency proposing a regulation can receive feedback from other agencies that may have equities involved, in order to arrive at a more complete proposal that avoids, to the extent possible, inadvertent negative effects on other agencies. Disclosure of this information would foreseeably harm any rulemaking agency, including OFCCP, by chilling

robust feedback from agencies across the federal government to arrive at clear, consistent, and legally sound rulemaking proposals.

g. Category G consists of the agency's internal deliberations in responding to correspondence from the National Center for Transgender Equality raising several questions regarding the scope and proper interpretation of the Religious Exemption Directive. The withheld information includes draft initial responses to the correspondence, prior to review by SOL or Departmental leadership. Disclosure of this information would foreseeably harm OFCCP by chilling their ability to deliberate in writing and disseminate draft correspondence for comment, thus resulting in a more cumbersome process and less complete, accurate, and robust responses to stakeholders seeking clarification about published Directives.

h. Category H consists of OFCCP's internal deliberation regarding the content of the Religious Exemption Directive that was ultimately published in final form on August 10, 2018, as well as deliberation regarding, and initial drafts of, frequently asked questions (FAQs) that OFCCP was considering issuing that would accompany the Directive as further guidance. This category also included requests for legal advice and deliberation of legal issues associated with the Directive, which is also protected by attorney-client privilege. Disclosure of this information would foreseeably harm OFCCP by chilling necessary collaboration within the agency and with its counsel to ensure that all issues related to the Directive and guidance were discussed, evaluated, and that the final published guidance on the topic was accurate, defensible, and helpful to the federal contractors over which OFCCP has jurisdiction.

i. Category I consists of agency deliberations regarding how to address various questions that came into the Department from news media and contractor representatives regarding the Religious Exemption Directive after the Directive was published. The withheld information includes OFCCP's initial and deliberative thoughts on whether to respond to the inquiries, what the form and content of any response to such inquiries should be, deliberations about how language in the Directive should be interpreted, and communications with the legal servicing division regarding these topics. Disclosure of this information would foreseeably harm

OFCCP by chilling its ability to deliberate in writing regarding questions raised by the public about published guidance, thus resulting in a more cumbersome process for addressing such questions that would give rise to less complete, accurate, and robust responses to stakeholders seeking clarification about published Directives.

    j.  Category J consists of OFCCP deliberation regarding the contents of an Information Collection Request (ICR) that was in draft form and that the agency was working to finalize for submission to the Office of Management and Budget. The withheld information included staff recommendations to OFCCP managers regarding how to address issues related to confidentiality in the ICR document. Disclosure of this information would foreseeably harm OFCCP by chilling written deliberation and opinions from staff to management regarding the contents of an ICR, resulting in a more cumbersome review process that would lead to OFCCP submitting less comprehensive and clear ICRs for public comment, which would give rise to more confusion in the regulated community.

    k.  Category K consists of the agency's internal deliberations regarding, and draft responses to, correspondence and emails from Senator Lankford and members of his staff to OFCCP regarding the scope of the religious exemption in Executive Order 11246 in light of a 2017 DOJ Memorandum on religious liberty, the Religious Exemption Directive, and rulemaking related to the religious exemption. The withheld information includes initial, non-final drafts of responses to this correspondence, as well as DOL internal pre-decisional deliberation regarding the best way to respond to this correspondence and other deliberation regarding prioritization of various agency initiatives related to the religious exemption. Disclosure of this information would foreseeably harm OFCCP by chilling its ability to share initial draft responses for comment and to engage in written deliberation among staff regarding responses to Congressional correspondence, thus making it more difficult for OFCCP to respond to such correspondence in a timely and accurate manner.

    l.  Category L consists of OFCCP's deliberations regarding how to respond to members of Congress and individual complainants who had contacted the agency regarding

7

complaints that had been filed with OFCCP. The withheld information includes initial impressions of OFCCP staff and managers regarding the content of the complaints in question, deliberations on how to respond to correspondence regarding these complaints, and non-final draft responses that were disseminated for comment. Disclosure of this information would foreseeably harm OFCCP by chilling its ability to deliberate internally and share draft responses for comment within the agency, which would result in less comprehensive and accurate responses to these complainants and members of Congress. There would also be harm to individual complainants in the form of confusion if non-final information regarding their complaints was released.

      m.    Category M consists of OFCCP's internal deliberations amongst regional and national office staff regarding the settlement of enforcement actions against two federal contractors. The withheld information consisted of deliberation between OFCCP regional and national office staff regarding how to approach settlement and specific terms under discussion, as well as deliberation and non-final drafts of the press release announcing the settlement that were circulated for comment within OFCCP to ensure accuracy. Disclosure of this information would foreseeably harm OFCCP by chilling its ability to disseminate draft press releases among staff to confirm factual accuracy, which would result in press releases being issued that have not been properly reviewed that may cause confusion to the public.

      n.    Category N consists of OFCCP's internal deliberations, and communications with legal counsel, regarding how to respond to a FOIA request that it received from a civil rights organization, and whether proactive disclosure of information in another matter was appropriate under FOIA. The withheld information includes initial, non-final opinions and deliberations about what information would be responsive to the request, as well as advice from OFCCP's legal counsel regarding how to structure the search for responsive documents, some of which falls within the attorney-client privilege. Disclosure of this information would foreseeably harm OFCCP by chilling its ability to deliberate in writing regarding the most effective and efficient way to search for documents responsive to FOIA requests, which would in turn result in less timely, comprehensive, and accurate responses to these requests.

    o. Category O consists of internal deliberations leading up to the issuance of a Directive extending an enforcement moratorium against TRICARE subcontractors. The withheld information includes written communications between and among OFCCP staff regarding OFCCP's jurisdiction over federal contractors, in what form guidance on the question should be issued and what contents should be included, and draft provisions in the Directive that were circulated for comment. Many of these communications were also with OFCCP's legal servicing office and thus fall under the attorney-client privilege. Disclosure of this information would foreseeably harm OFCCP by chilling internal deliberations, including those with legal counsel, regarding the contents and form of guidance the agency desires to issue, and ways to structure such guidance in a way that is clear for stakeholders and legally defensible.

    p. Category P consists of written communications from OFCCP Compliance Officers to OFCCP managers, and manager responses, regarding the Religious Exemption Directive soon after its issuance, including questions regarding whether the Religious Exemption Directive would have any impact on a complaint investigation that was in progress. Disclosure of this information would foreseeably harm OFCCP by chilling OFCCP Compliance Officers, who are responsible for the investigation of complaints and conducting compliance evaluations, from asking questions of OFCCP managers about the impact of newly issued guidance on their investigations, and in turn prevent managers from requesting more information in order to provide accurate guidance in response to these questions.

    q. Category Q consists of internal deliberations within the agency and with legal counsel regarding an inquiry from a media organization into instances in which OFCCP has, or has considered, referring a case under investigation to the Department of Justice (DOJ) for litigation. The withheld information included internal deliberations within OFCCP about how best to respond to this inquiry, as well as consultation with OFCCP's legal counsel regarding the situations in which OFCCP has in the past and could in the future consider referring a case to DOJ, portions of which are protected by attorney-client privilege. Disclosure of this information would foreseeably harm OFCCP by releasing to the public internal deliberations about the strategic

considerations OFCCP takes into account in determining whether to refer a case to DOJ rather than seeking enforcement before the DOL Office of Administrative Law Judges. Further, some of the information withheld includes specifics about previous attempts to refer cases to DOJ. As such, release of this information could negatively impact OFCCP's enforcement efforts going forward. Finally, disclosure would also chill agency staff and management from full and robust deliberation about whether to refer a matter to DOJ in the future.

    r.  Category R consists of internal deliberations regarding the priorities and information that should be included in the agency's Operating Plan. The Operating Plan is a document created by DOL on an annual basis that includes submissions from the various DOL agencies regarding their regulatory, programmatic, policy, and/or enforcement priorities for the upcoming year. The withheld information included internal deliberations regarding how to prepare for a meeting regarding the creation of the Operating Plan, including discussion of ideas that were still under consideration. Disclosure of this information would foreseeably harm OFCCP by chilling internal deliberations about the contents of its yearly Operating Plan going forward, resulting in a more inefficient process and a less robust final product.

    s.  Category S consists of internal deliberations among individuals from OFCCP and SOL regarding questions that the agency received from outside stakeholders regarding the Memorandum on Religious Liberty issued by DOJ in 2017 and the effect it had on OFCCP's interpretation of the religious exemption in Executive Order 11246. Withheld information included deliberations about the incoming question, initial drafts of portions of an FAQ addressing the incoming inquiry, and discussions with and requests for advice from SOL regarding the inquiry and the interpretation and scope of the DOJ Memorandum, portions of which are also covered by the attorney-client privilege. Disclosure of this information would chill OFCCP from engaging in full and robust deliberation going forward regarding questions posed to the agency that raise highly complex, novel, and sensitive legal and policy issues, and dissuade OFCCP from internally circulating draft guidance for comment in an effort to provide clear, responsive, and legally defensible information to the regulated community addressing these questions.

t.   Category T consists of OFCCP's deliberations in response to a question it received about the proper interpretation of its Directive 2019-01, Compliance Review Procedures and its effect on compliance review procedures going forward. The withheld information consisted of internal preliminary assessments regarding when the agency would proceed to an on-site investigation and at what stage of the compliance review process investigations into particular issues would take place, and preliminary assessments that SOL needed to be looped in prior to providing a final answer. Disclosure of this information would foreseeably harm OFCCP by chilling its ability to engage in candid internal deliberations regarding how to properly follow compliance review protocols, resulting in a less efficient process and untimely and less complete final guidance.

u.   Category U consists of OFCCP's internal deliberations regarding the issuance of its Focused Reviews Directive, DIR 2018-04, and what effect, if any, the Directive has on OFCCP's methodology for scheduling federal contractors for review. OFCCP's scheduling methodology must comport with 4th Amendment legal standards for government searches, thus OFCCP must ensure that any policies it issues will not raise problems meeting these standards. The withheld information includes deliberation regarding various edits in the draft directive before it was finalized, and back and forth deliberation between OFCCP officials discussing the Directive once it was published and any impact on OFCCP's scheduling methodology. Disclosing this information would foreseeably harm OFCCP by chilling its ability to deliberate candidly on matters related to its scheduling methodology going forward, potentially putting the agency at legal risk and harming its efforts to enforce federal equal employment opportunity authorities.

v.   Category V consists of internal deliberations within the agency regarding the content of "rollout materials" that were published contemporaneously with the publication of the Religious Exemption Notice of Proposed Rulemaking. "Rollout materials" generally include fact sheets, talking points, press releases, FAQs, and other internal documents to assist with responding to any questions that may come in from stakeholders or media organizations. The withheld information included suggested revisions to rollout materials and OFCCP's deliberations

over these revisions and the overall content of the materials. Disclosure of these non-final draft documents would foreseeably harm OFCCP by chilling the candid and robust interagency review process within DOL that takes place prior to the issuance of rollout materials, resulting in a less efficient process and rollout materials that are less comprehensive, accurate, and helpful to the public.

      w.      Category W consists of internal deliberations between OFCCP officials regarding whether guidance related to OFCCP's Indian and Native American Employment Rights Program (INAERP) needed to be adjusted to be consistent with other recently issued guidance. The withheld information included draft suggested edits to INAERP guidance by one OFCCP official, and deliberation between two OFCCP officials regarding whether the edits were necessary and justified. Disclosure of these non-final draft documents would foreseeably harm OFCCP going forward by chilling employees from raising possible inadequacies with present guidance to OFCCP officials, which in turn will result in less comprehensive and accurate guidance to the public.

      x.      Category X consists of discussion between the OFCCP Director and his staff regarding how the agency might work to implement various Directive issued over the previous year, and ideas for possible future Directives and other policy guidance. The withheld information included the Director's preliminary thoughts about implementation of published Directives, his priorities going forward, and initial ideas about specific topics for which the agency should consider issuing guidance. Disclosure of these sorts of initial deliberations about priorities for the agency and ideas for future guidance would foreseeably harm OFCCP going forward by chilling honest and robust deliberation about these topics, leaving the agency less able to effectively prioritize and consider the relative efficacy of various initiatives.

      y.      Category Y consists of an internal to-do list created by an OFCCP official and emailed to herself regarding various items that needed to be completed and the priority for addressing these items. In general, the withheld information sets forth the work priority order of the tasks the OFCCP official and how best to prioritize assignments. Disclosure of this information

would cause foreseeable harm because it would disclose personally identifiable information of complainants to the agency as described below in the Exemptions 6 and 7(C) section, disclose information regarding purely internal personnel matters, and disclose this employee's subjective opinion regarding which projects were a higher priority to OFCCP. Releasing this information would be harmful because it may lead the public to believe that the agency considered certain projects to be higher or lower priority than they actually were, leading to confusion regarding OFCCP's priorities during that particular period.

8. To summarize, OFCCP has withheld information associated with various categories of records that formed parts of its processes for addressing various issues within its purview. Additionally, some of these categories of emails relate to highly sensitive matters which OFCCP and CRLM personnel were asked to opine on or establish policies and guidance. For example, records associated with OFCCP's establishment of guidance and policies regarding the religious exemption (consisting of, but not limited to, the Religious Exemption Directive, Religious Exemption Notice of Proposed Rulemaking, and review of associated comments, fact sheets, talking points, press releases, FAQs, and other internal documents to assist with responding to any questions that may come in from stakeholders or media organizations, were part of the critical process that allowed OFCCP to determine how it should interpret the religious exemption and how to apply it in various factual scenarios.

9. The Religious Exemption Directive, Religious Exemption Notice of Proposed Rulemaking, and related guidance that were prepared received significant media attention and resulted in inquiries from the public and congressional members. When reviewing such highly sensitive matters, it is critical that the processes for reviewing these matters are protected and agency personnel have the liberty of engaging in the free discussion and exchange of ideas that would allow the agency to arrive at the best decision.

10. Additionally, it would be harmful to disclose recommendations, opinions, and thoughts that agency personnel contributed while determining how to address a matter that ultimately did not become part of the final agency decision. Release of such information would

not only confuse the public, but when dealing with highly sensitive topics such as information relating to OFCCP's interpretation of the religious exemption could result in public hysteria which would lead to agencies such as OFCCP being inundated and overburdened with additional work as personnel attempt to address public concerns regarding ideas and recommendations that the agency ultimately did not pursue.

### ii. Attorney Client Material

11. The Department withheld portions of information that is protected by the attorney-client privilege from certain documents as described in the *Vaughn* index. The withheld material consists of communications between OFCCP and various attorneys within the Department regarding CRLM providing legal advice about various issues, including questions relating to implementing the religious exemption, legal issues associated with inquiries from the public and Congress, refining language in various documents, as well as inquiries regarding its authority to engage in certain actions, just to name a few topics discussed in the various emails.

12. OFCCP sought advice and counsel relating to these various issues under the presumption that the information discussed between it and its legal counsel would remain confidential. As such, OFCCP engaged in candid discussions with CRLM regarding these various issues to ensure that it arrived at the correct legal conclusion and engaged in appropriate action when addressing each issue. The information categorized as being protected by the attorney client privilege was only shared internally to assist various DOL employees with making decisions about how to move forward with various issues. Releasing these communications would undermine OFCCP's ability to utilize its legal counsel for assistance in resolving complex problems if such information was routinely disclosed to the public. Consequently, the Department would risk losing an important tool in its decision-making process. Releasing this information would also undermine the attorney-client relationship between OFCCP personnel and CRLM because the quintessential notion of confidentiality that employees rely on when determining they should involve their legal team in their decision-making process would be compromised. As such, OFCCP determined that these various documents, as described in the *Vaughn* index, are subject to the attorney-client

privilege and disclosure of this information would cause foreseeable harm to DOL's relationship with its attorneys as well as undermine its decision-making process.

### III.   Segregability Analysis

13.   DOL Conducted a line-by-line review of each page that was determined to be responsive to the request and that was produced to the Plaintiff to determine if portions of the records were releasable. DOL completed this segregability analysis when initially producing the responsive information and prior to re-releasing additional records on June 15, 2022.

14.   When performing its segregability analysis DOL considered whether any information contained in the responsive records were not subject to an exemption and therefore releasable to the Plaintiff. As it relates to the challenged Exemption 5 redactions, DOL further considered whether factual information could be segregated from information subject to the deliberative process privilege and the attorney client privilege. After evaluating each record, DOL determined that the factual information contained within the withheld information was too inextricably intertwined with the deliberative material or the information protected by the attorney client privilege to be releasable in a form that would not result in incomplete, fragmented, unintelligible sentences composed of isolated meaningless words. Nor did all the withheld, challenged, information consist of only purely factual information. Nonetheless, when conducting its line-by-line review, DOL also considered whether the withheld information was integral to the Department's decisionmaking process for the relevant matter being reviewed and/or SOL's ability to provide legal advice about that particular matter. Utilizing this test, DOL, determined that it produced all releasable information and that there are no other reasonably segregable, non-exempt information that can be released to the Plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct hereto.

Executed this 20th day of January, 2023, in Washington, DC.

/s/

_____

15

Keir Bickerstaffe
Counsel for Interpretation and Advice
Civil Rights and Labor Management Division
Office of the Solicitor
U.S. Department of Labor
200 Constitution Avenue, NW
Washington DC 20210