UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON BLADE, *et al.*, **)** | |
| **)** | |
| *Plaintiffs*, **)** | |
| **)** | |
| v. **)** | Case No. 20-cv-2591 (RDM) |
| **)** | |
| U.S. DEPARTMENT OF LABOR, **)** | |
| **)** | |
| *Defendant*. **)** | |

**OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT
AND REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

The Department of Labor ("Defendant"), by and through undersigned counsel, respectfully submits Defendant's Opposition to the Cross Motion for Summary Judgment filed by Washington Blade, *et al.* ("Plaintiffs") and Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

In this action under the Freedom of Information Act, 5 U.S.C. 552 *et seq*. ("FOIA"), the undisputed facts are that Plaintiffs requested for "all emails to and from the persons in the roles of director, deputy director and director of policy including the words 'religion' or 'religious' from Jan. 20, 2017, to Aug. 30, 2019." ECF No. 30-1 at 1 ¶ 1 (Def's Statement of Undisputed Material Fact ("Def's SOMF")) and ECF No. 31-2 at 1 ¶ 1 (Plaintiffs' Combines Statement Material Facts and Response to Def's SOMF ("Pls' SOMF")). Plaintiffs agreed to limit their FOIA exemption challenges to Exemption 5 and at the time Defendant filed its dispositive motion, there were 360 records remain challenged. *See* Def's SOMF at 1-2 ¶ 3; Pls' SOMF at 1 ¶ 3.

Invoking FOIA Exemption 5, Defendant withheld categories of documents ranging from information shared between Office of Legal Counsel ("OLC") and its Office of Federal Contract Compliance Programs ("OFCCP") regarding the interagency clearance process for summaries of draft legislation, Congressional Questions for the Record (QFRs), discussion of policies, guidance, and other initiatives that OFCCP was at one time considering, but ultimately did not finalize, publish, or otherwise disseminate to the public. *See* Def's SOMF at 3 ¶ 9; Pls' SOMF at 2 ¶ 9. Some of the interagency clearance process was for OFCCP's Religious Exemption Notice of Proposed Rulemaking and published in final form on August 10, 2018; Defendant's internal discussions prior to responding to constituent groups; legal advice and discussion of legal issues associated with the Religious Exemption Directive. *Id*. The interagency clearance process occurs when the agency proposing regulation can receive feedback from other agencies that may have equities involved. *See* Def's SOMF at 3 ¶ 10; Pls' SOMF at 3 ¶ 10.

Other withheld records are draft statements for press inquiries regarding the Religious Exemption Directive prepared and circulated amongst DOL agencies, including OFCCP. *See* Def's SOMF at 4 ¶ 12, Pls' SOMF at 3 ¶ 12. These were sent to the Office of the Secretary for final review and comment and reflect the back-and-forth discussions regarding what should be included or excluded before a final statement was approved for responding to press inquiries. *Id*. Still others were discussions between OFCCP and Defendant's Civil Rights and Labor-Management Division ("CRLM"), regarding issues associated with responding to a congressional inquiry from Senator Lankford. *Id*. In addition, some records sought input from various DOL agency employees regarding a draft White House executive order. Def's SOMF at 4 ¶ 15; Pls' SOMF at 3 ¶ 15.

The records Plaintiffs sought pertained to a rule proposed in 2019 "meant to clarify the scope and application" of the Religious Exemption within [Executive Order] 11246 . . . [and] generated significant public debate and corresponding media coverage."  ECF No. 31-1 at 4 ("Pls' Opp'n").  The process of rescinding the Rule meant to clarify Executive Order 11246 generated "more than 5,200 comments."  *Id*.  Plaintiffs challenge some of Defendant's withholding of records under to FOIA Exemption 5's deliberative process privilege, but not all. *See generally* Pls' Opp'n.

Plaintiffs' "first" argument is that "Defendant is withholding portions of Bates page 2143, in which an OFCCP employee expresses a seemingly negative reaction to the Proposed Rule."  Pls' Opp'n 8 (citing ECF No. 31-3, Declaration of Katie Townsend, Exhibit H ("Townsend Decl.").  Plaintiffs argue that Defendant's redaction is a "mere reaction" or "opinion" by an employee that is not protected under the deliberative process privilege.  *Id*.  The "withheld communication from [a subordinate] to the Director of Enforcement . . . about how two new policy directives that OFCCP issued may impact cases.  The redacted information reflects the back-and-forth discussions that occur between" a supervisor and subordinate.  *See* ECF 30-4 at 28.  The withheld information reflects the subordinate employee's dissenting "subjective opinion regarding the new policy directives" to which the supervisory responded: "Thank you very much for your email. I recognize and respect that you and others may not agree with OFCCP's directive, however it is important as it incorporates into OFCCP policy recent developments in the law, including from the U.S. Supreme Court…"  Exhibit A, Supplemental Declaration of Keir Bickerstaffe at 3 ¶ 10 ("Suppl. Bickerstaffe Decl.").

Defendant's justification for the deliberative process privilege claim here suffices.  *See Hall & Assocs. v.* EPA, 2021 U.S. Dist. Lexis 63260 * 4 (D.D.C. 2021) ("[T]he *Vaughn* index

indicates that the redacted paragraph 'contain[s] deliberations' on 'other matters worthy of protection' – namely, the PVSC enforcement action."); *Nova Oculus Partners, LLC v. Sec. Exchange Comm'n*, 486 F. Supp. 3d 280, 292-93 (D.D.C. 2020) (discussions about an SEC enforcement action properly withheld under deliberative process privilege).  Thus, Plaintiffs' reliance on cases that address "opinions" or "reactions" to press reporting is inapplicable and therefore not dispositive on this particular withholding.  To be sure, the withholding of a subordinate's dissenting view regarding an enforcement directive expressing to a superior is a proper assertion of the deliberative process privilege.

"Second, in Bates pages 1022–23, 3823–31, and in Doc. Nos. 91–92, Defendant is withholding an "outline of major topics covered in [Questions for the Record]" ("QFRs") . . . [that are] plainly not deliberative."  Pls' Opp'n at 9.  Regarding Bates Pages 1022-23, because "the withheld material was used to decide what to include the final version of the QFR, it is pre-decisional and deliberative and thus protected by the deliberative process privilege of Exemption 5."  *See* ECF No. 30-4 at 15.  The give-and-take was between the Office of the Secretary ("OSEC") and seventeen other divisions withing the Department of Labor, including OFCCP.  *Id.*; *see also* Suppl. Bickerstaffe Decl. at 4 ¶ 11 ("It should be noted that while the draft QFR in question was created sometime around January 5, 2018, DOL did not finalize it until March 28, 2018, which is indicative of the fact that there were significant back-and-forth discussions between the various agencies regarding which information should be included in the final QFR."); ECF No. 31-5, Exhibit E.

The email from OSEC stated "Attached for your expedited review are draft responses by Secretary Acosta to QFRs stemming from a November 15, 2017, hearing of the House Committee on Education and the Workforce entitled, 'Examining the Policies and Priorities of

the U.S. Department of Labor.'"  Exhibit E.  "[T]he QFRs/responses address a wide range of

DOL issues, programs, rulemakings, compliance efforts, and various initiatives."  *Id*.  Defendant

"has also withheld information contained within Bates Nos. 1022-23, 3823-31, and Doc. Nos.

91-92 (which form a part of Production 1) pursuant to the deliberative process privilege."  Suppl.

Bickerstaffe Decl. at 4 ¶ 11.  Communications regarding "how [an agency] would move forward

with responding to questions for the record" and "proposed edits and other revisions to ensure

that the responses to the Senate Committee's inquiry accurately reflected the [agency's]

position" are properly withheld under the deliberative.  *See CREW v. GSA*, Civ. No. 18-2071

(CKK), 2021 U.S. Dist. Lexis 59128 **34-35 (D.D.C. 2021) ("These categories of

communications may constitute  deliberative and pre-decisional materials exempt under FOIA's

Exemption 5 because they involve an agency's deliberation about how to respond to inquiries

about the agency's policy); *see also Judicial Watch, Inc. v. Dep't of Homeland Sec*., 736 F.

Supp. 2d 202, 208 (D.D.C. 2010) (concluding that "documents generated as part of a continuous

process of agency decision making, viz., how to respond to on-going inquiries" from Congress

and the media are "pre-decisional" and "deliberative in nature").  Plaintiffs have presented no

facts or legal arguments that raise a genuine issue of material fact regarding these withholdings.

Regarding Bates Page 1400, Defendant "withheld deliberative information that was sent

by [] OFCCP to [the] . . . Office of Congressional and Intergovernmental Affairs [regarding]

OFCCP's response to an inquiry from Senator Lankford."  ECF No. 30-4 at 16.  "The draft

material was not in final form and was part of the deliberation [about] what information it should

include in the final response and how to structure it."  *Id*.

Defendant withheld Production 1 Document 96-97 because it is an email "from Deputy

Director to a Senior Advisor regarding process for responding to inquiry sent by the Institute for

Workplace Equality." *See* ECF 30-5 at 4.  The discussion was about "what information to include in the document and what information to exclude from it."  *Id*.  "Because this discussion preceded the final version of the response, it is pre-decisional.  Additionally, because the withheld information was part of the ongoing review of how to respond to the inquiry it is protected by the deliberative process privilege."  *Id*.; *see also* ECF No. 30-5 at 5 (Production 1 Document 133-34).  An unredacted part of the email reflects "Attached is the proposed letter to Senator Lankford with the Director's edits included.  Please process for OSEC review."  ECF No. 31-6, Exhibit AA.  Both also "reflect[] OFCCP's internal deliberation about the timing for providing a response to an inquiry sent by the Institute for Workplace Equality and factors that hindered OFCCP from providing a final response."  Suppl. Bickerstaffe Decl. at 4 ¶ 12.

Plaintiffs challenge both of these deliberative process redactions because "[t]he draft letter to which this email thread relates has already been finalized" and was merely an "alert." Pls' Opp'n 10.  It is baffling that Plaintiffs take this position given that the very exhibit they have placed in the record contradicts them.  The email itself states "attached is the proposed letter." Exhibit AA.  Document No. 133 appears to be a communication that was withheld on identical grounds.  *See* ECF No. 31-6 Exhibit CC.  Thus, Plaintiffs' averment that the "email . . . has already been finalized" does not raise a disputed issue of fact.  Because Defendant withheld portions of a proposed letter as confirmed by the actual letter and not a final one as Plaintiffs assert, there is not genuine factual dispute and Defendant is entitled to judgment as a matter of law.

Next, Plaintiffs argue that "Defendant is withholding records that are not predecisional." *See* Pls' Opp'n at 10.  Specifically, Plaintiffs appear to argue that Bates No. 2329-37 and Production 1 Document No. 8-9 are "predecisional" because "final talking points" do not qualify

for withholding under the deliberative process privilege. *See* Pls' Opp'n at 11. Plaintiffs make the same argument with regard to Bates No. 2331, 2334, 3993–98, and 2272. *Id*. The records cannot be deliberative because OFCCP's "two senior-most personnel drafted and circulated it for use." *Id*. at 12.

Bates Nos. 2329-37 is a prepared draft statement for press inquiries regarding the religious exemption directive shared amongst Office of Public Affairs ("OPA"), the Office of the Assistant Secretary for Policy, and OFCCP. *See* ECF No. 30-4 at 35. This draft statement preceded the final statement that was approved by OSEC for responding to inquiries. *Id*. "This draft statement is reflective of the back-and-forth discussions between the above-mentioned agencies regarding how the statement should be formatted, and what should be excluded from it." *Id*. The records "pertain to [Defendant's] response to an inquiry that Buzzfeed sent on August 14, 2018." Suppl. Bickerstaffe Decl. at 4-5 ¶ 13. "While Mr. Leen in his then capacity as the OFCCP Director served as a decisionmaker within OFCCP, [he] did not have final decisionmaking authority for matters that were required to be reviewed by multiple DOL agencies." *Id*. "Instead OPA, which is responsible for addressing public affairs matters and which handles all interactions with the mainstream media, would be responsible for providing an appropriate response, after obtaining appropriate feedback from relevant agency stakeholders." *Id*. "The withheld information represents OFCCP's feedback or suggested response but is not necessarily reflective of the actual final response that OPA sent to Buzzfeed." *Id*.

Plaintiffs assume that "because OFCCP's two highest ranking staff crafted this response [] there was no give-and-take and no one sought or provided feedback, indicating its definitive, final nature [cleaned up]." Pls' Opp'n at 12. This assumption is not based in fact. As the record makes clear, the final arbiter for Defendant's responses is the OPA. *See* Suppl. Bickerstaffe

Decl. at 4-5 ¶ 13.  The final talking points are approved by OPA.  *Id*.  Courts in this District have consistently held that Exemption 5 protects from disclosure media-related withholdings reflecting an agency's ongoing decisionmaking about how the agency's activities should be described to the general public.  *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 118 (D.D.C. 2014) (quoting *Nat'l Sec. Archive v. FBI*, No. 88-1507, 1993 U.S. Dist. Lexis 4830, 1993 WL 128499, at *2 (D.D.C. Apr. 15, 1993)); *accord Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 188 (D.D.C. 2017) (finding that Exemption 5 protected documents clearly generated as part of a media strategy in response to FOIA litigation and that correspondence is predecisional in that it pre-dated the release of a public statement and is deliberative because it involved personal opinions and thoughts of staff members working to identify the options); *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) ("[E]mail messages involving recommendations and evaluations for how to respond to Congressional and media requests for information" are properly withheld under Exemption 5's deliberative process privilege).  Plaintiffs themselves concede that some "courts in this District have found that draft talking points or draft responses to news media are eligible for withholding" under Exemption 5's deliberative process privilege.  *See* Pls' Opp'n at 16.

With regard to Bates Page Nos. 651-55, Plaintiffs appear to argue that "any answer" to OPA's question: "why did we refer these two cases [to DOJ] rather than litigate ourselves?" would be "necessarily explaining an action already taken" and not be deliberative.  Plaintiffs, however, are wrong because the finality would be based on OPA's response to the Buzzfeed reporter not the internal decision made to refer cases to the Department of Justice.  On its face, OFCCP is seeking for other divisions' input: "I want to make sure SOL/CRLM concurs with the much pared down response provided by OPA" to Buzzfeed.  *See* ECF No. 31-4 at Bates Page

Nos. 651-55.   Again, Plaintiffs' argument and objection are of no moment because it is based on the erroneous assumption that the deliberative process privilege does not apply here because a final decision had already been made.  They are wrong.

Plaintiffs' identical challenge to Bates Page Nos. 2308-25, an email deliberation between OPA, OFCCP, and the Office of the Assistant Secretary for Policy ("ASP") about how to respond to a Buzzfeed reporter's inquiry fares no better.  The deliberation begins with an inquiry from OPA about how best to respond to the reporter's inquiry and ends with OPA thanking everyone for their input presumably before responding to the reporter's question.  *See* ECF No. 31-6, Exhibit EE.  Plaintiffs' belief that the ASP being "final" somehow supports their rebuttal is misplaced.  Defendant "withheld opinion and recommendation from OFCCP and ASP personnel detailing one possible way that DOL could respond to the inquiry.  All these withheld communications reflect the back-and-forth consultative process between various DOL agencies that form part of the process for making decisions about various issues."  ECF No. 30-4 at 34.

Likewise, Plaintiffs' challenge to Defendant's withholding of Bates Page Nos. 2644-86 perishes on the same hill, *i.e.*, where or who makes the final decision regarding Defendant's responses to press inquiries.  Given the bases of Defendant's Exemption 5 claims, Plaintiffs' beliefs about who or where is final does not create a genuine issue of material fact.  Plaintiffs have neither raised a genuine issue of material fact nor submitted any legal authority for their arguments that intermediate deliberations are somehow final.  Plaintiffs challenge Bates Page Nos. 2644-86, which arises from a press inquiry that implicates OFCCP's Frequently Asked Questions ("FAQs").  Again, because OPA is the final arbiter regarding press inquiries and OPA is clearly seeking OFCCP's opinions, the give-and-take that precedes OPA's media response are protected by the deliberative process privilege.  Plaintiffs appear to be attempting to avoid the

inevitable by trying to recast this discussion to be about FAQs, but the discussions themselves put that assertion to rest.  Plaintiffs' challenge to Bates Page Nos. 4001-05 suffers from the same fatal flaw.  In that exchange, one OFA employee emails another "[i]f you agree with one of the two response[s] below, perhaps you could run them by the OFCCP Director who chimes in to say "Please put the following."  ECF No. 31-5 at 126.

In Bates Pages 2644-86, OFCCP states that the FAQs "have been approved by OSEC and ASP."  ECF No. 31-5 at 109; Bates Page No. 2675.  Thus, the "final" would be the FAQs and the preceding give-and-take would be protected under Exemption 5.  The withheld information represents OFCCP's feedback or suggested response but is not reflective of the actual final response that OPA sent to Buzzfeed.  *See Tax Analysts v. IRS*, 152 F. Supp. 2d 1, 17-25 (D.D.C. 2001) (protecting memoranda "written by a component office without decisionmaking authority to a different component office" that had such authority and noting that "because the drafters lack ultimate [decisionmaking] authority, their views are necessarily [predecisional]."); *Bureau of Nat. Affs., Inc. v. DOJ*, 742 F.2d 1484, 1497 (D.C. Cir. 1984) (holding "that views submitted by one agency to a second agency that has final decisional authority are predecisional materials").  The privilege also avoids public confusion from premature disclosure of ideas that are not – or not yet – final policy, and misimpressions from dissemination of documents suggesting reasons and rationales not ultimately relied on.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).[1]

---

[1]     Plaintiffs baselessly claims that DOL withheld information that is purely factual and retrospective within Bates Page Nos. 576-86, 593-98, 613-16, and 621-655.  Similar to the foregoing, the withheld information is reflective of a cross-agency collaboration between OFCCP, OPA, and the Solicitor's Office regarding how to respond to a Buzzfeed inquiry.  *See* generally ECF No. 30-4.  The withheld information is not only reflective of legal advice prepared by an attorney within SOL outlining the legal criterions that OFCCP considers when deciding whether it should disbar a contractor, but is also reflective of the steps that SOL, OPA,

With regarding to Bates Page Nos. 3268-73, Plaintiffs appear to argue that Defendant has failed to demonstrate what role these records played in deliberations. *See* Pls' Opp'n at 15. However, it is Plaintiffs who have failed to raise a genuine issue of material fact in response to Defendant's statement that participants in this dialogue, including OFCCP and CRLM about "the best method for reviewing reasonable accommodation complaints and ensuring that contractors are providing reasonable accommodations when their employees request them."  ECF No. 30-4 at 54.

The withheld information "pertain[s] to an idea that OFCCP Director sought to explore with the staff.  The subsequent email sent by an OFCCP employee notes that employee's opinion about which issues need to be evaluated and one method for evaluating reasonable accommodation complaints."  Suppl. Bickerstaffe Decl. at 7 ¶ 18.  The redacted information is . . . part of the back-and-forth consultation between staff as OFCCP establishes which projects it wanted to work on within the given year and what steps needed to be taken to effectively addressed an identified issue." *Id*.  Thus, the withheld information arises out of OFCCP's Director's desire to make disability issues a priority.  That is the "role" of this document in the deliberations.  Ongoing internal debates and deliberations about whether and how best to endorse

---

and OFCCP took to determine the total volume of cases that were referred to DOJ, and the deliberation over what should be included in the response to inquiry. *Id*.; *see also* Suppl. Bickerstaffe Decl. at 7-8 ¶ 20.  The cross-agency collaborative nature of this review is highlighted in Mr. Michael Trupo's, OPA, email to Mr. Tom Dowd, OFCCP, where he indicates "I was asked to pare down our response and I want to be sure that this is accurate." *See* Bates Nos. 599-601.  This statement is also magnified the fact that OFCCP did not consider responding to this inquiry to be "cut-and-dried" as characterized by the Plaintiff and required consultation with their legal counsel prior to providing an adequate response. *Id*.  The withheld information, therefore, comfortably falls within the confines of the deliberative process privilege. *See, e.g., Gellman v. Dep't of Homeland Security*, 2020 WL 1323896 at *12 (D.D.C. Mar. 20, 2020) ("the overwhelming consensus among courts in this District is that discussions about how to respond to the press are protected by this privilege") (internal quotations omitted).

and to advocate for the survival of a substantive policy priority at a time of uncertainty as to its continuation due to significant external pressure to change course falls within the protection of the deliberative process privilege.  *See Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 364 (D.C. Cir. 2021).

Next Plaintiffs argue that Defendant is improperly withholding Bates Pages Nos. 2252– 66, 2275, and 3730–31 as "secret law."  Pls' Opp'n at 17 ("Here, Defendant is withholding 'interpretations' of law that it 'actually applied in a particular . . . case.'").  They argue that Defendant should not be allowed to withhold "interpretations of existing law." *Id*. at 18-19.  An agency must disclose its "working law," which is "binding agency opinions and interpretations" that the agency "actually applies in cases before it." *Sterling Drug Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971)).  Relatedly, an agency is not permitted to develop "a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Schlefer v. United States*, 702 F.2d 233, 244 (D.C. Cir. 1983).

The information withheld in the referenced records are not secret law.  Plaintiffs have nitpicked the withheld information to raise a baseless argument that the deliberative process privilege should not apply while ignoring obvious indications that the withheld information is covered.  The dialogue originated from Defendant's Director of Policy and Program Development to OFCCP and Agency Attorneys, concerning a "request from a contractor group to clarify the directive."  ECF No. at 25-40.  OFCCP responds that it would prepare a "proposed" "draft" "after conferring." *Id*.  The discussion consisted of subordinate's subjective opinions, proposals that were not adopted, and involved agency attorneys. *See* ECF No. 30-4 at 29-32. Bates Page Nos. 2275 and 3730-31, ECF 31-5, Exhibit M and Q, respectively, appear to be

identical to immediately foregoing discussions about contractor groups' requests.  Specifically, Defendant "withheld the underlying back-and-forth discussions between the Acting OFCCP Director, the OFCCP Director of the Division of Policy and Program, and an attorney within SOL regarding what information should be included in the response [to the contractor group], which legal standards apply, and appropriate interpretation of applicable laws and regulations." Suppl. Bickerstaffe Decl. at 8 ¶ 21.

The fact that the dialogue arose from a question related OFCCP's FAQs, belies Plaintiffs' assertion that Defendant was apply "secret law."  Records that courts consider "secret law" are typically a superior officer's instruction to his or her subordinates who are responsible for actually implementing the policy. *See Elec. Frontier Found. v. United States DOJ*, 739 F.3d 1, 9 (D.C. Cir. 2014) (explaining that the secret law doctrine applies when a document represents "a conclusive or authoritative statement of its policy, usually a higher authority instructing a subordinate on how the agency's general policy applies to a particular case, or a document that determined policy or applied established policy").  On the contrary, in this case, the secret law doctrine is inapposite because employees are engaging in a deliberative discussion about how to respond to a contractor's inquiry.  Moreover, the deliberative process privilege covers deliberations about how to respond to press inquiries regarding a law enforcement initiative.  *See Comm. on Oversight & Gov't Reform v. Lynch*, 156 F. Supp. 3d 101, 111-12 (D.D.C. 2016); *see also American Center for Law & Justice v. Dep't of State*, 330 F. Supp. 3d 293, 302 (D.D.C. 2018) ("the deliberative process privilege applies to documents generated in the crafting of an agency's public statements").

Deliberative discussions that took place around preparing a response to an inquiry from the Institute for Workplace Equality regarding the religious directive are also protected.  See

ECF No. 30-4 at 36, Bates Page No. 2440.  "[T]he redacted material [] contains requests for the lower-level officials to review ideas that were raised and provide next steps for responding to the inquiry."  *Id*.  It is also "reflective of the back-and-forth consultative process that occurs between various OFCCP offices . . . reviewing applicable laws, regulations, and directives and consulting with its legal department in order to determine how to respond to the Institute's questions."  *Id*.  Like Bates Page No. 2440, Defendant's withholdings within Bates pages 331–36, 1266, 2586–91, 2071–77,18 3703, and 3739 are proper.  "These documents pertain to a cross-DOL agency collaborative review by OSEC, OASP, OPA, and OFCCP of an inquiry sent by the Institute for Workplace Equality regarding their interpretation of the highly sensitive and media generating religious exemption directive."  Suppl. Bickerstaffe Decl. at 8 ¶ 22.

The deliberative process privilege is not limited to the formation of a specific policy, but, to be protected by the privilege, "materials must bear on the formulation or exercise of agency policy-oriented judgment.  *See People for Ethical Treatment of Animals v. Dep't of Health & Hum. Servs.*, 464 F. Supp. 3d 385, 395 (D.D.C. 2020); *see also Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021) (holding that "the [deliberative process] privilege may extend to internal deliberations over how best to promote or preserve an existing policy in the midst of public debate over whether the government should have such a policy").  This is particularly true as it relates to a non-profit organization like the Institute, which would likely publicize the Department's response to its members.

Plaintiffs' assertion that Defendant has withheld Bates No. 3350 without providing any justifications is false.  *See* Pls' Opp'n at 20.  Bates Page No. 3350 was withheld pursuant to the deliberative process and attorney-client privileges.  *See* ECF No. 30-4 at 59; *see also* Suppl. Bickerstaffe Decl. at 9 ¶ 23.  Specifically, Defendant has withheld a verbal communication that

occurred between a Deputy Director of the DPPD and an SOL attorney that was memorialized within the email.  *Id*.  It consists of legal advice from the attorney about talking points regarding the religious exemption directive.  *Id*.  The information is also deliberative because it factored into OFCCP's decision regarding how to raise this topic with employees and is predecisional because it preceded OFCCP's final decision regarding how to approach the meeting.  *Id*.  The withheld information is therefore also protected by the deliberative process privilege.  *See ACLU v. DHS*, 738 F. Supp. 2d 93, 108-09 (D.D.C. 2010) (allowing withholding of documents discussing development of talking points because agency "must be allowed to make discretionary judgments and consider policy choices in an environment protected from public scrutiny and unnecessary disclosures or otherwise the environment 'would tend to "discourage candid discussion within an agency.").

### b. Defendant has Properly withheld Records under the Attorney-Client Privilege

Plaintiffs challenge Defendant's Exemption 5 attorney-client withholdings on the grounds that the consultations were "not made for the 'primary purpose' of seeking legal advice."  Pls' Opp'n at 21.

Exemption 5 prevents the mandatory disclosure of inter-agency documents that are protected by the attorney-client privilege.  *See Nat'l Ass'n of Crim. Def. Lawyers v. Exec. Office for U.S. Attorneys*, 844 F.3d 246, 249 (D.C. Cir. 2016).  In the FOIA context, "the agency is the 'client' and the agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege."  *Judicial Watch v. Dep't of Treasury*, 802 F. Supp. 2d 185, 200 (D.D.C. 2011. "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services."  *Tax Analysts v. IRS*, 117 F.3d 607,

618 (D.C. Cir. 1997) (citing *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)).  Where an email exchange involves a "request[ ] for and the provision of legal advice in the context of an attorney-client relationship," the exemption pursuant to the attorney-client privilege applies.  *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 207 (D.D.C. 2007).  Based on the above, the D.C. Circuit does not say that the "primary purpose" must always be seeking legal advice.  It can be enough that the communication are confidential and seek legal advice.  Plaintiffs attempt improperly to raise Defendant's burden.

The Court should discount Plaintiffs' argument that portions of the email thread contained within Bates Nos.  505–23, and Doc. Nos. 116–17 do not qualify for protection under Exemption 5's attorney-client privilege.[2]  At the outset, Defendant has only withheld one sentence from Bates Page No. 505-23[3] and Docs No. 116 and Docs No. 116, which consists of an email from an OFCCP employee to two attorneys within CRLM, as well as one sentence from Bates No. 511, which consists of an internal email between CRLM attorneys initiating their review of the information and inquiry sent by OFCCP personnel.  As indicated by the *Vaughn* index and the released records (*i.e.*, Bates Page No. 1309, involving OFCCP request for legal advice from CRLM regarding meeting with Senator Lankford's office, or Bates No. 775, which involves a request from OFCCP to a CRLM attorney and OFCCP staff to review a draft letter to Senator Lankford), these contested documents were part of a larger legal review of how OFCCP should respond to inquiries from Senator Lankford's office.  *See* ECF No. 31-4, Exhibit B; *see also* Suppl. Bickerstaffe Decl. at 9 ¶ 24.  As indicated in the released records, CRLM and

---

[2]     DOL has asserted both the deliberative process privilege and the attorney client privilege over portions of this subset of records.

[3]     DOL has withheld each iteration of the same statement appearing in this group of documents.

16

OFCCP routinely engage in back-and-forth discussion regarding various issues that may arise. CRLM therefore does not depend on formal requests for legal advice in order to facilitate reviews or discussions about legal issues.  As evidenced by Bates No. 511, the matter was forwarded to Mr. Keir Bickerstaffe for further review.  Upon receiving the email "looping" them into the issue, CRLM immediately began reviewing the information that OFCCP provided to it, further evidencing the fact that CRLM understood that this was a request for legal advice.  *See* ECF No. 30-4 at 4.

Similarly, Plaintiffs contend that portions of Bates Page Nos. 2985–3020 are not subject to the attorney client privilege.[4]  Here, Defendant has withheld a communication from Mr. Craig Leen that was sent to three CRLM attorneys and one OFCCP employee on January 22, 2019 regarding factors that could be considered when reviewing various documents (*See* Bates Page Nos. 3004-3005, for description of various documents under review, which included but were not limited to pregnancy background, pay discrimination data document, religious exemption, TRICARE).  *See* Suppl. Bickerstaffe Decl. at 10 ¶ 26.  As indicated by Bates Nos. 3017-3018, a CRLM attorney subsequently responded to the email indicating "If you'd like CRLM to take this back and try to address Craig's comments, we can."  *Id*.  An OFCCP employee then responded to the email by stating "Yes-Please."  *Id*.  This is clearly indicative of the fact that while not expressly containing a formal request for legal advice, OFCCP was seeking legal advice by including CRLM attorneys on the email chain.  Moreover, as explained in Defendant's *Vaughn*, the information was shared with CRLM attorneys to provide them with additional factors they could consider when evaluating the relevant documents for legal sufficiency or determining

---

[4]    DOL has asserted both the deliberative process privilege and the attorney client privilege over portions of this subset of records.

which legal principals should be included in the documents.  The information is therefore protected by the attorney client privilege. *See McKinley v. Bd. of Governors of Fed. Res. Sys.*, 849 F. Supp. 2d 47, 65 (D.D.C. 2012) (finding that attorney-client privilege covers facts divulged by client to attorney and opinions given by attorney to client based on those facts (*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F.Supp.2d 100, 114 (D.D.C.2005)).  Because these emails sought legal advice for the agency from an agency lawyer, Defendant properly withheld it under Exemption 5 and the attorney-client privilege.  *See Nova Oculus Partners, LLC v.* SEC, 486 F. Supp. 3d 280, 292 (D.D.C. 2020); *Walston v. DOD*, 238 F. Supp. 3d 57, 66 (D.D.C. 2017) (Because the analyst asks the attorney a legal question and the attorney responds with his legal opinion and both intended to communicate in confidence this email exchange involved a "request[ ] for and the provision of legal advice in the context of an attorney-client relationship" protected under Exemption 5).

Plaintiffs contends that information withheld within Bates Page Nos. 581–86, 593, 621, and 643 do not qualify for protection pursuant to the attorney-client privilege because "the primary purposes of these communications was to obtain factual information from CRLM" in order to respond to an inquiry from a Buzzfeed reporter.  *See* Pl's Opp'n at 25.  Plaintiffs' characterization of this information is inaccurate. Here, Defendant has withheld communications from CRLM attorneys to OFCCP staff.  Per Defendant's *Vaughn* index the withheld material is not simply reflective of the total number of cases that OFCCP referred to the DOJ.  Nor is it solely limited to a discussion of that matter.  Rather, the withheld material consists of the legal advice regarding factors OFCCP considers when determining whether to refer cases to DOJ and how the availability of sanctions, including debarment, factors into the decision.  *See* Suppl. Bickerstaffe Decl. at 11 ¶ 27.  Such information encompasses strategies that OFCCP utilizes in

order to ensure compliance with its laws, rules, and regulation and is not merely reflective of data.  *Id*.

Finally, Plaintiffs' claim that Defendant has failed to provide properly justification for withholding certain information contained within Bates pages 3789–95 under to the attorney-client privilege.  *See* Pls' Opp'n at 26.  Plaintiffs' claim in unfounded.  As specified in the *Vaughn* index, Defendant has withheld internal communications between OFCCP staff and SOL attorneys, which contains advice about whether OFCCP should disclose certain data on its website, as well as criteria that should factor into its decisionmaking process.  *See* ECF No. 30-4 at 70.  Defendant has also withheld facts provided by OFCCP staff that assisted SOL attorneys with preparing appropriate advice for the client.  *Id*.  As further elaborated upon within the *Vaughn* Index, such information is protected by both the attorney-client privilege and the deliberative process privilege because it formed a part of OFCCP internal process for determining whether it was appropriate to disclose the relevant data.  *Id*.  As OFCCP routinely engages with the Solicitor's Office regarding various issues that may arise it is not unusual to find legal advice intertwined with deliberative material that assists the agency with making decisions about various matters that may impact its ability to engage in its enforcement mission. *See id*.; *see also* Suppl. Bickerstaffe Decl. at 11 ¶ 27.  In such instances, it is appropriate to assert both the deliberative process privilege and the attorney client privilege over the relevant written discussions.

### c.    Defendant has Demonstrated Foreseeable Harm

Plaintiffs argue that Defendant cannot satisfying FOIA foreseeable harm requirement because the information withheld is both "historical" and "superseded."  Pls' Opp'n at 29. Specifically, Plaintiffs argue that, because "the deliberations comprising the subject of Plaintiffs'

request ended years ago," Defendant would be unable to make the required showing.  *Id*. at 30.

Plaintiffs also argue that, because "the key players involved [in passing the religious exemption]

are no longer in a position to make any future decisions about the Rule," their communications

cannot be chilled.  *Id*. at 31.  Generally, Plaintiffs argue that Defendants deliberative process and

attorney client privileges foreseeable harm justifications are "generalized."  *Id*. at 34.

  None of Plaintiffs' three points are availing.  On the historical point, Congress has

already contemplated and designated when information that is withheld pursuant to the

deliberative process privilege should be released because it is historical.  The FOIA

Improvement Act of 2016 created a sunset provision on the deliberative process privilege,

amending the text of FOIA Exemption 5 to provide that "the deliberative process privilege shall

not apply to records created 25 years or more before the date on which the records were

requested."  Not only are the withheld records not historical, but they are also not even remote

given that the Rule was enacted in 2020, OFCCP has continued to discuss the highly visible rule,

which is evidenced by its recission, which only went into effect on March 31, 2023.

  An agency can meet the foreseeable harm showing by identifying specific harms to the

relevant protected interests that it can reasonably foresee would actually ensue from disclosure of

the withheld materials and connecting the harms in a meaningful way to the information

withheld.  *See Judicial Watch, Inc. v. DOJ*, Civ. A. No. 17-0832 (CKK), 2019 U.S. Dist. Lexis

163473, 2019 WL 4644029, at \*5 (D.D.C. Sept. 24, 2019)).  In the attorney-client privilege

context, which focuses assurances of confidentiality to clients, the disclosure of privileged

information in an of itself is a harm.  *See Ecological Rights Found. v. EPA*, 2021 U.S. Dist.

Lexis 27748 at \*\*106-08 (D.D.C. 2021).  "When invoking the attorney-client privilege [], an

agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm."

*Id*. An agency can make a sufficient foreseeable harm showing by "specifically focus[ing] on the information at issue and linking it to a foreseeable harm like a chill on future internal deliberations." *Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020).

In this case, Defendant has focused on the records at issues and linked the disclosure of those records to a foreseeable harm.  For example, with regarding to deliberations between OFCCP and CRLM, Defendant avers that "disclosure of [Category 3 records] would cause foreseeable harm by chilling candid written deliberation via email regarding how to properly evaluate religious accommodation claims within the context of OFCCP's compliance evaluation process, resulting in less accurate and potentially confusing information ultimately being disseminated to complainants who have filed such claims with OFCCP."  ECF No. 30-3, Declaration of Keir Bickerstaffe at 4-5 ¶ 7(c) ("Bickerstaffe Decl.").  Perhaps disclosure alone of this information would suffice to show foreseeable harm.  In the deliberative arena and QFRs specifically, "disclosure of the deliberation . . . would foreseeably harm OFCCP by chilling its ability to communicate regarding how best to respond to inquiries from Congress, and requiring disclosure of initial drafts of QFRs, before they have been reviewed and revised by Departmental leadership, would stymie [Defendant's] process for delegating draft responses to various agencies, resulting in a more cumbersome process and likely resulting in less comprehensive and accurate responses to Congress."  *Id*. at 5 ¶ 7(e).  This justification "focuses" on the foreseeable harm that would emanate from disclosure of draft QFR responses and the adverse effect on OFCCP's ability to be responsive to congressional inquiries.  Defendant has generally made a sufficient showing to rebut Plaintiffs' claims that the records are historical and Defendant's justifications are remote and generalized.

April 7, 2023                    Respectfully submitted,


                                 MATTHEW M. GRAVES, D.C. Bar #481052
                                 United States Attorney

                                 BRIAN P. HUDAK
                                 Chief, Civil Division


                                 By: _____/s/_____
                                 KENNETH ADEBONOJO
                                 Assistant United States Attorney
                                 United States Attorney's Office-DC
                                 601 D Street, N.W. Civil Division
                                 Washington, D.C.  20530
                                 Telephone: (202) 252-2562