# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**WASHINGTON BLADE, et al.,**

       *Plaintiffs,*

    v.

**U.S. DEPARTMENT OF LABOR,**

       *Defendant.*

Civil Action No. 20-cv-2591 (RDM)

---

## REPLY IN SUPPORT OF
## <u>PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Katie Townsend
DC Bar No. 1026155
Adam A. Marshall
DC Bar No. 1029423
Gunita Singh
DC Bar No. 1601923
Shawn Musgrave
DC Bar No. 90002165
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: gsingh@rcfp.org
Email: smusgrave@rcfp.org

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

   I.   Defendant is improperly asserting the deliberative process privilege. .............................. 3

      A.   Defendant is withholding records that are not deliberative. ........................................ 3

      B.   Defendant is withholding records that are not predecisional....................................... 6

      C.   Defendant is withholding records that are neither deliberative nor predecisional. ......................................................................................................... 10

      D.   Defendant is not permitted to withhold secret law. .................................................... 13

      E.   Defendant's withholding of draft responses to non-profit organizations improperly stretches the limit of FOIA Exemption 5. ............................................... 14

   II.   Defendant is improperly withholding records under the attorney-client privilege.......... 14

   III.   Defendant has not demonstrated that it is reasonably foreseeable that harm will result from disclosure of the information it has withheld under Exemption 5. ................ 20

      A.   No harm to future agency decisionmaking will result from disclosure..................... 20

          i.   Disclosure of the "Category H" records will not harm future DOL decisionmaking.................................................................................... 21

          ii.   Disclosure of records involving former senior leadership will not harm future DOL decisionmaking. ............................................................ 22

      B.   Defendant's allegations of harm purportedly resulting from release of certain records in "Categories" A, B, C, E, I, K, Q, and V are impermissibly perfunctory.............................................................................................................. 23

      C.   No harm to attorney-client communications will result from release of the records.................................................................................................................... 25

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*100Reporters v. Dep't of State*,
602 F. Supp. 3d 41 (D.D.C. 2022) .......................................................................... 12

*Am. C.L. Union v. Dep't of Justice*,
90 F. Supp. 3d 201 (S.D.N.Y. 2015) .................................................................... 8, 11

*Am. Ctr. for L. & Justice v. Dep't of Justice*,
392 F. Supp. 3d 100 (D.D.C. 2019) ......................................................................... 6

*Am. Immigr. Council v. Dep't of Homeland Sec.*,
905 F. Supp. 2d 206 (D.D.C. 2012) ............................................................. 9, 12, 13

*Am. Soc'y of Pension Actuaries v. IRS*,
746 F. Supp. 188 (D.D.C. 1990) ............................................................................. 9

Arthur Andersen & Co. v. IRS,
679 F.2d 254 (D.C. Cir. 1982) ................................................................................ 7

*Cause of Action Inst. v. Dep't of Justice*,
330 F. Supp. 3d 336 (D.D.C. 2018) ................................................................. passim

*Citizens for Resp. & Ethics in Wash. v. Gen. Servs. Admin.*,
No. CV 18-2071 (CKK), 2021 WL 1177797 (D.D.C. Mar. 29, 2021) ...................... 4

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ........................................................................ passim

*Ctr. for Biological Diversity v. EPA*,
279 F. Supp. 3d 121 (D.D.C. 2017) ......................................................................... 8

*Ctr. for Investigative Reporting v. Customs & Border Prot.*,
436 F. Supp. 3d 90 (D.D.C. 2019) ......................................................................... 21

*Ctr. for Pub. Integrity v. Dep't of Defense*,
No. CV 19-3265 (CKK), 2020 WL 4530596 (D.D.C. Aug. 6, 2020) ...................... 10

*Defs. of Wildlife v. Dep't of Agric.*,
311 F. Supp. 2d 44 (D.D.C. 2004) ......................................................................... 11

*Ecological Rights Found. v. EPA*,
No. CV 19-980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021) ........................ 11

*Fish & Wildlife Serv. v. Sierra Club, Inc.*,
  141 S. Ct. 777 (2021) ................................................................................ 7, 8

*Gellman v. Dep't of Homeland Sec.*,
  No. 16-CV-635 (CRC), 2020 WL 1323896 (D.D.C. Mar. 20, 2020) ....................... 4

*In re Grand Jury*,
  475 F.3d 1299 (D.C. Cir. 2007) .................................................................... 15

*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014) ...................................................................... 15

*Jordan v. Dep't of Labor*,
  308 F. Supp. 3d 24 (D.D.C. 2018),
  *aff'd*, No. 18-5128, 2018 WL 5819393 (D.C. Cir. Oct. 19, 2018) ....................... 17

*Jud. Watch, Inc. v. Dep't of Commerce*,
  375 F. Supp. 3d 93 (D.D.C. 2019) ................................................................. 23

*Jud. Watch, Inc. v. Dep't of Homeland Sec.*,
  841 F. Supp. 2d 142 (D.D.C. 2012) ............................................................... 16

*Jud. Watch, Inc. v. Dep't of Homeland Sec.*,
  926 F. Supp. 2d 121 (D.D.C. 2013) ............................................................... 19

*Jud. Watch, Inc. v. Dep't of Justice*,
  No. 19-CV-800 (TSC), 2020 WL 5798442 (D.D.C. Sept. 29, 2020) ..................... 25

*Jud. Watch, Inc. v. Dep't of State*,
  349 F. Supp. 3d 1 (D.D.C. 2018) .................................................................... 8

*Leach v. Yellen*,
  No. CV 18-3075 (JEB), 2022 WL 2643536 (D.D.C. July 8, 2022) ....................... 15

*Mayer, Brown, Rowe & Maw LLP v. IRS*,
  537 F. Supp. 2d 128 (D.D.C. 2008),
  *aff'd sub nom.*, *Mayer Brown LLP v. IRS*, 562 F.3d 1190 (D.C. Cir. 2009) ........... 6, 7

*Muttitt v. Dep't of State*,
  926 F. Supp. 2d 284 (D.D.C. 2013) ............................................................... 20

*Nat'l Council of La Raza v. Dep't of Justice*,
  411 F.3d 350 (2d Cir. 2005) .......................................................................... 7

*Nat'l Day Laborer Org. Network v. Immigr. & Customs Enf't,*
  486 F. Supp. 3d 669 (S.D.N.Y. 2020) ................................................................... 3, 21

*Nat'l Pub. Radio, Inc. v. Dep't of Homeland Sec.,*
  No. 1:20-cv-2468-RCL, 2022 WL 4534730 (D.D.C. Sept. 28, 2022)...................................... 24

*NLRB v. Sears, Roebuck & Co.,*
  421 U.S. 132 (1975)................................................................................................ 9

*People for Ethical Treatment of Animals v. Dep't of Health & Hum. Servs.,*
  464 F. Supp. 3d 385 (D.D.C. 2020) .............................................................................. 14

*Project on Gov't Oversight, Inc. v. Dep't of Homeland Sec.,*
  No. 1:18-CV-2051-RCL, 2023 WL 2139380 (D.D.C. Feb. 21, 2023)...................................... 4

*Protect Democracy Project, Inc. v. Dep't of Health & Hum. Servs.,*
  569 F. Supp. 3d 25 (D.D.C. 2021)............................................................................. 4, 5

*Reporters Comm. for Freedom of the Press v. Customs & Border Prot.,*
  567 F. Supp. 3d 97 (D.D.C. 2021),
  *appeal dismissed*, No. 21-5293, 2022 WL 801357 (D.C. Cir. Mar. 15, 2022).................. 22, 25

*Reporters Comm. for Freedom of the Press v. FBI,*
  3 F.4th 350 (D.C. Cir. 2021)................................................................................. passim

*Schlefer v. United States,*
  702 F.2d 233 (D.C. Cir. 1983)................................................................................. 8

*SmithKline Beecham Corp. v. Apotex Corp.,*
  439 F.3d 1312 (Fed. Cir. 2006)............................................................................... 12

*Tax Analysts v. IRS,*
  117 F.3d 607 (D.C. Cir. 1997)................................................................................. 14

*Texas v. United States,*
  798 F.3d 1108 (D.C. Cir. 2015)............................................................................. 2, 22

*Trea Senior Citizens League v. Dep't of State,*
  923 F. Supp. 2d 55 (D.D.C. 2013)........................................................................... 10

*Trea Senior Citizens League v. Dep't of State,*
  994 F. Supp. 2d 23 (D.D.C. 2013)........................................................................... 6

*Vaughn v. Rosen,*
  523 F.2d 1136 (D.C. Cir. 1975)............................................................................. 6, 11

*Vento v. IRS*,

    714 F. Supp. 2d 137 (D.D.C. 2010) ........................................................................ 18

**Statutes**

5 U.S.C. § 552 ............................................................................................................. 1

5 U.S.C. § 552(a)(8) .................................................................................................... 2

5 U.S.C. § 552(b)(5) .................................................................................................... 2

Pub. L. No. 114-185, 130 Stat. 538 (2016) ................................................................ 20

**Rules**

162 Cong. Rec. S1496 (daily ed. Mar. 15, 2016) ...................................................... 21

*Heads Up*, Merriam-Webster,

    https://www.merriam-webster.com/dictionary/heads-up ........................................ 6

*Hr'g before the Subcomm. on Labor, Health & Hum. Servs., Educ., & Related Agencies of the S.*

    *Comm. on Appropriations*, 115th Cong. (June 27, 2017),

    https://www.congress.gov/event/115th-congress/senate-

    event/LC50582/text?q=%7B%22search%22%3A%5B%22ofccp%22%2C%22ofccp%22%5D

    %7D&s=3&r=4 ....................................................................................................... 5

Julie Moreau, *New 'religious exemption' directive could harm LGBTQ workers, critics say*, NBC

    News (Aug. 16, 2018),

    https://perma.cc/576A-6G8E ................................................................................. 3

OFCCP, Directive (DIR) 2018-03 (Aug. 10, 2018),

    https://perma.cc/5YMF-D4R2 ............................................................................... 7

Regulations.gov, *Rescission of Implementing Legal Requirements Regarding the Equal*

    *Opportunity Clause's Religious Exemption Rule*, Office of Federal Contract Compliance

    Programs (Mar. 1, 2023),

    https://bit.ly/3GDtRcE ...................................................................................... 1, 20

## INTRODUCTION

As set forth in Plaintiffs' Memorandum in Support of their Cross-Motion for Partial Summary Judgment, ECF No. 31-1 ("Pls.' Cross-Mot."), this case concerns a request submitted by Plaintiffs the Washington Blade and reporter Chris Johnson under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), for records related to the promulgation of a proposed rule ("Proposed Rule") that sought to broaden the scope of Executive Order ("EO") 11246's religious exemption, permitting federal contractors to discriminate in employment decisions on the basis of, *inter alia*, sex, sexual orientation, and gender identity. The Proposed Rule became final in December 2020 (the "Rule"), and on March 31, 2023, the Rule was rescinded.[1]

In response to the arguments advanced by Plaintiffs in their Cross-Motion, Defendant reprocessed and released thirteen pages of records that Plaintiffs demonstrated did not qualify for withholding under FOIA Exemption 5. *Compare* Pls.' Cross-Mot. (discussing the unlawful redactions applied to pages 1400, 2145–58, and 3768–69), *with* Second Decl. of Katie Townsend ("Suppl. Townsend Decl.") Ex. A (Defendant's release of these pages without those redactions). Despite previously declaring under penalty of perjury that the Department of Labor ("DOL") had "produced all releasable information" and that release of these additional pages would "harm OFCCP[,]" Decl. of Keir Bickerstaffe, ECF No. 30-3, ¶¶ 14, 7.k, p (emphasis added), Defendant now admits that "Bates Nos. 1400, 2145-2158, and 3768-3769 are releasable," Decl. of Keir Bickerstaffe, ECF No. 36-2 ("Suppl. Bickerstaffe Decl."), ¶ 5. Defendant does not explain why this information was previously withheld.

As a result of Defendant's release of those thirteen previously unlawfully withheld pages,

---

[1] *See* Regulations.gov, *Rescission of Implementing Legal Requirements Regarding the Equal Opportunity Clause's Religious Exemption Rule*, Office of Federal Contract Compliance Programs (Mar. 1, 2023), https://bit.ly/3GDtRcE.

and because Plaintiffs voluntarily narrowed the scope of the records they seek, *see* Pls.' Cross-Mot. at 2; Pls.' Appendix A, ECF No. 31-9, the issues for this Court to resolve have narrowed since the filing of Defendant's opening brief. Important issues, however, remain in dispute. Defendant continues to unlawfully withhold numerous records under the deliberative process and attorney-client privileges of FOIA Exemption 5, 5 U.S.C. § 552(b)(5).[2] Defendant also has failed to demonstrate compliance with FOIA's foreseeable harm provision. *Id*. § 552(a)(8)(A)(i).

Defendant's opposition merely rehashes the same perfunctory and insufficient arguments proffered in its opening brief, and either does not address or misconstrues several of Plaintiffs' arguments. For example, Defendant does not respond to—and therefore concedes—Plaintiffs' argument that the agency officials that oversaw the issuance of the Proposed Rule have departed DOL, undercutting any claim about the purported effect of disclosure on their future work at the agency. Pls.' Cross-Mot. at 30–31. Further, Defendant completely ignores—and therefore concedes—Plaintiffs' argument that talking points relied on by the agency, which lower-level staff were directed to "study and be familiar with," Pls.' Cross-Mot. at 12, fall outside the scope of the privilege. *Cf. Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." (citation omitted)). And, tellingly, Defendant completely ignores Plaintiffs' argument that Defendant is improperly "rely[ing] on" a "fear of embarrassment to withhold information" about the controversial and "problematic" Rule that was criticized for "increas[ing] rather than decreas[ing] confusion about the application of the Executive Order 11246 religious exemption." Pls.' Cross-Mot. at 37–38.

There is strong public interest in the records sought by Plaintiffs, which would shed light

---

[2]  *See* Pls.' Updated Appendix A (eliminating the thirteen pages no longer in dispute).

on the basis for a since-rescinded Rule that "LGBTQ advocates say constitute[d] a 'license to discriminate' in federal employment."[3]   And the fact that the Rule is no longer in place significantly diminishes, if not extinguishes, any interest in withholding the records.  *See, e.g.*, *Nat'l Day Laborer Org. Network v. Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 698–99, 709 (S.D.N.Y. 2020) (discussing how records "pertain[ing] to the implementation [or] application of" a "long-since discontinued" program were not subject to the deliberative process privilege in part because the nature of the "harm that would come from the release of" records related to such "discontinued [] program" was nebulous (citation and quotations omitted)).  Because Defendant has unlawfully withheld material responsive to Plaintiffs' FOIA request, for the reasons herein and in Plaintiffs' Cross-Motion, this Court should grant summary judgment in Plaintiffs' favor.

## ARGUMENT

### I.    Defendant is improperly asserting the deliberative process privilege.

#### A.    Defendant is withholding records that are not deliberative.

*First*, Defendant is withholding portions of Bates page 2143, in which an OFCCP employee expresses a negative reaction to the Proposed Rule.  *See* Townsend Decl. Ex. H.  According to Defendant, the employee "expressed an opinion about how two new policy directives that OFCCP issued may impact cases."  ECF No. 36-7, at 44; Suppl. Bickerstaff Decl. ¶ 10.  In its Reply, Defendant claims it needs to withhold the employee's opinion about the Proposed Rule because its "personnel [need] to be candid when making various decisions," ECF No. 36-7, at 44.  But that claim is not supported as to this document:  Defendant may not shield an opinion under the guise that it constitutes part of "the back-and-forth discussions that occur between a supervisor and subordinate," Def.'s Reply, ECF No. 36 ("Def.'s Reply") at 3 (quotations omitted), where such

---

[3]    Julie Moreau, *New 'religious exemption' directive could harm LGBTQ workers, critics say*, NBC News (Aug. 16, 2018), https://perma.cc/576A-6G8E.

"back and forth" is not part of and has no bearing on "the consultative process" by which decisions are made, *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). As is clear from Bates page 2143, *see* Townsend Decl. Ex. H, Defendant is improperly withholding what amounts to a "[m]ere internal reaction[] . . . [which does] not relate to a particular decision by the agency." *Gellman v. Dep't of Homeland Sec.*, No. 16-CV-635 (CRC), 2020 WL 1323896, at *13 (D.D.C. Mar. 20, 2020); *see also Project on Gov't Oversight, Inc. v. Dep't of Homeland Sec.*, No. 1:18-CV-2051-RCL, 2023 WL 2139380, at *8 (D.D.C. Feb. 21, 2023) ("'[O]bservations of first impression' are not deliberative in nature[;] the deliberative process privilege applies only to the withholdings . . . that represent . . . analysis, . . . or recommendations.").

*Second*, in Bates pages 1022–23, 3823–31, and in Doc. Nos. 91–92, Defendant is withholding an "outline of major topics covered in [Questions for the Record]" ("QFRs"). *See* Townsend Decl. Exs. E, C, X. This bulleted list of "major topics covered" is not deliberative. Defendant cites to *CREW v. General Services Administration* for the proposition that "proposed edits and other revisions [to QFRs] to ensure that the responses . . . accurately reflect[] the [agency's] position" are properly withheld. Def.'s Reply at 5 (citing No. CV 18-2071 (CKK), 2021 WL 1177797, at *9 (D.D.C. Mar. 29, 2021)). But the "brief synopsis of the major issues covered" in the QFRs—all that is withheld from these records—are not "proposed edits [or] revisions" thereto. *See* Townsend Decl. Exs. E, C, X (list "of major topics covered in [the] QFRs"). Critically, Defendant does not even attempt to distinguish these records from those in *Protect Democracy Project, Inc. v. Department of Health & Human Services*, cited in Plaintiffs' Cross-Motion at 9, where this Court explained that it "certainly cannot conclude that" a "list is itself deliberative," noting it was not "persuaded . . . by the Department's [] unilluminating contention that the list is protected under Exemption 5 because it formed the 'foundation' for the

agency's 'discussion' of its options." *See* 569 F. Supp. 3d 25, 43 (D.D.C. 2021) (Moss, J.) (quotation marks omitted) (list of "planned outreach activities from the [Obama] administration," which was unlikely to "reflect[] an exercise of discretion and judgment calls"). Because the information withheld in Bates pages 1022–23, 3823–31, and in Doc. Nos. 91–92 is not part and parcel of the "continuous process of agency decision making" regarding "how to respond to on-going inquiries from Congress," Def.'s Reply at 5 (citation and quotations omitted), but just reflects "major topics" already publicly known,[4] *see* Pls.' Cross-Mot. at 9 n.4, it must be released.

*Third*,[5] with respect to Doc. Nos. 96 and 133, Defendant has redacted the text of an email that follows the phrase "Heads up:". Townsend Decl. Exs. AA, CC. The email also had an attachment, which has been withheld. Defendant misconstrues Plaintiffs' argument, emphasizing that an unredacted portion of the email thread indicates that the attachment is a "proposed letter," Def.'s Reply at 6, as if that has any bearing on Defendant's obligation to release the portion of the email thread following the phrase "[h]eads up." Plaintiffs do not seek the attachment, *see* Def.'s SMF, ECF No. 30-1, ¶ 2 (Defendant's SMF, confirming that Plaintiffs limited their request to exclude attachments). Plaintiffs challenge only the redactions to the emails whose "purpose" was "to alert" the recipients to a particular fact, *Mayer, Brown, Rowe & Maw LLP v. IRS*, 537 F. Supp. 2d 128, 139 (D.D.C. 2008), *aff'd sub nom.*, *Mayer Brown LLP v. IRS*, 562 F.3d 1190 (D.C. Cir.

---

[4]     Under Federal Rule of Evidence 201, the Court may take judicial notice of the fact that the referenced "questions for the record (QFRs) stemm[ed] from a November 15, 2017, hearing of the House Committee on Education and the Workforce entitled, 'Examining the Policies and Priorities of the U.S. Department of Labor,'" Townsend Decl. Ex. E, that is publicly available online; any interested person may familiarize themselves with the "major topics" that were covered at that hearing either by watching the video or reading the transcript. *See Hr'g before the Subcomm. on Labor, Health & Hum. Servs., Educ., & Related Agencies of the S. Comm. on Appropriations*, 115th Cong. (June 27, 2017), https://bit.ly/41NwHo8.
[5]     Because Defendant disclosed it mid-briefing, Bates page 1400, previously addressed in this section, is no longer at issue.

2009); *Heads Up*, Merriam-Webster ("[A] message that alerts").[6]  Because the "[h]eads up" is "not

. . . a direct part of [a] deliberation process and . . . do[es] not make recommendations or express

opinions on legal or policy matters," *Mayer, Brown*, 537 F. Supp. 2d at 139 (cleaned up) (quoting

*Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)), summary judgment as to these records

should be entered for Plaintiffs.[7]

       B.     <u>Defendant is withholding records that are not predecisional.</u>

       <u>*First*</u>, in Bates pages 2329–37 and Doc. Nos. 8–9, Defendant has withheld information

written by Craig Leen, then-OFCCP Director, that is not predecisional.  Townsend Decl. Exs. N,

DD.  Leen describes the withheld information as "the summary [he] drafted and sent to OPA[8] at

their request for providing in response to press inquiries, which would be the basis for the talking

points."  *Id*.  Instead of grappling with the relevant caselaw, *see, e.g.*, *Am. Ctr. for L. & Justice v.

Dep't of Justice*, 392 F. Supp. 3d 100, 107 n.1 (D.D.C. 2019), Defendant merely asserts that

"Exemption 5 protects from disclosure media-related withholdings reflecting an agency's ongoing

decisionmaking about how the agency's activities should be described to the general public,"

Def.'s Reply at 8.  This misses the mark as applied to Bates pages 2329–37 and Doc. Nos. 8–9

because, as Bates pages 2331 and 2334 make clear, Director Leen's redacted statements were

<u>affirmatively</u> relied upon by OFCCP personnel for use in creating informational materials such as

FAQs.  *See, e.g.*, *Trea Senior Citizens League v. Dep't of State*, 994 F. Supp. 2d 23, 35 (D.D.C.

2013) ("reject[ing] the argument made by the defendant, namely, that the possibility of change in

---

[6]      https://www.merriam-webster.com/dictionary/heads-up.

[7]      Defendant describes these records as relating to an inquiry that the Institute for Workplace
Equality sent to DOL, Suppl. Bickerstaffe Decl. ¶ 12, but the body of the emails appears to relate
to a response to Senator Lankford.  To the extent the emails relate to the Institute for Workplace
Equality, the Court may refer to the discussion *infra* at 14 pertaining to the ineligibility of draft
responses to nonprofits for withholding under the privilege.

[8]      DOL's Office of Public Affairs is abbreviated as OPA.

the [document] . . . should render records discussing [it] pre-decisional and deliberative. . . . Indeed, to do so would be to fall into the trap the D.C. Circuit warned of, where no 'policy document . . . would be sufficiently final to qualify as nonpredecisional'" (citation omitted)).

Rather than rebut Plaintiffs' *prima facie* case that Leen provided a statement embodying agency policy or was otherwise final, Defendant hopes that by referring to the withheld material as "draft[s]," Def.'s Reply at 7, it will be able to withhold it. But "simply designating a document as a 'draft' does not automatically make it privileged," *Mayer, Brown*, 537 F. Supp. 2d at 139 (citing *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982)); *see also FWS v. Sierra Club, Inc*., 141 S. Ct. 777, 788 (2021) ("If the evidence establishes that an agency has hidden a functionally final decision in draft form, the deliberative process privilege will not apply."). When "[t]he [record] consists of the reasoning . . . relied on by Department officials," *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 360 n.7 (2d Cir. 2005), LIKE here, Townsend Decl. Ex. N (Bates page 2334); Ex. DD, it "should be disclosed," *La Raza*, 411 F.3d at 360 & n.7.

*Second*, the same logic applies to Bates pages 3993–98 and 2272, where Leen responds to a Public Affairs "inquiry regarding [the religious exemption] directive"[9] by stating: "I would propose the following, which I prepared myself with Marika Litras, our career Acting Deputy Director." Townsend Decl. Exs. S, L. Public Affairs thanks Leen for his response, *id.* Ex. S, and Ms. Litras instructs a lower-level OFCCP employee to "study and be familiar with th[e] response" provided by Leen, *id*. Ex. L. Nowhere does Defendant acknowledge, let alone rebut, caselaw from this District that requires agencies to produce "talking points [that] represent the final, settled

---

[9]     Directive 2018-03 was issued by Leen in August 2018, one year before publication of the Proposed Rule in the Federal Register; the directive anticipated the Proposed Rule, stating: "These instructions will remain in force in anticipation of an addition to the Department's regulatory agenda followed by rulemaking informed by public comment." OFCCP, Directive (DIR) 2018-03 (Aug. 10, 2018), https://perma.cc/5YMF-D4R2.

'party line,'" as the privilege does not apply thereto. *Jud. Watch, Inc. v. Dep't of State*, 349 F. Supp. 3d 1, 9–10 (D.D.C. 2018). Defendant undermines its own position in suggesting that "the final arbiter for Defendant's responses is the OPA," Def.'s Reply at 7, because, here, Public Affairs accepts and thanks Leen for his statement—rather than rejecting, editing, or supplementing it. Townsend Decl. Exs. S, L; *cf. Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 149 (D.D.C. 2017) ("[W]here a document does not 'invite a response from the requesting official,' it is not likely to fall under the deliberative process privilege at all." (quoting *Schlefer v. United States*, 702 F.2d 233, 243 (D.C. Cir. 1983))); *see also ACLU v. Dep't of Justice*, 90 F. Supp. 3d 201, 218 (S.D.N.Y. 2015) ("[T]he question is not about a given document's label, but whether its reasoning or conclusions have become the agency's operative view of its legal duties.").

*Third*, with respect to Bates page 651,[10] Defendant misrepresents Plaintiffs' argument in support of disclosure. Defendant summarizes Plaintiffs' argument as follows: "Plaintiffs appear to argue that 'any answer' to OPA's question: 'why did we refer these two cases [to DOJ] rather than litigate ourselves?' would . . . not be <u>deliberative</u>." Def.'s Reply at 8 (emphasis added). Not so. Any answer to OPA's question in Bates page 651—"why did we refer these two cases [to DOJ] rather than litigate ourselves?", Townsend Decl. Ex. A—necessarily explains an action already taken; thus, it would not be <u>predecisional</u>. The D.C. Circuit has made it emphatically clear that when "documents [] discuss, describe, or defend an already-determined agency" decision, they do not fall within the scope of the privilege. *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 363 (D.C. Cir. 2021) (citing *Fish & Wildlife Serv.*, 141 S. Ct. at 786). Defendant does not cite any caselaw calling into question this longstanding principle, *see* Def.'s Reply at 8–9; nor could it, as "'communications made after the decision and designed to explain it' are reachable

---

[10]     This page is also addressed *infra* in the context of the attorney-client privilege.

under FOIA," *Am. Soc'y of Pension Actuaries v. IRS*, 746 F. Supp. 188, 190 (D.D.C. 1990) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975)).

*Fourth*, Defendant has withheld information in Bates pages 2322 and 2325 about "respond[ing] to an inquiry from Buzzfeed." ECF No. 30-4, at 33–35. Here, Senior Counsel and Policy Advisor Tim Taylor offers a statement after a series of personnel offer opinions, Townsend Decl. Ex. EE; following Taylor's statement, OPA exclaims, "Thank you everyone!", *id.*, and Leen writes back with "Thanks, Tim." No additional correspondence follows, *see* ECF No. 30-4, a fact Defendant does not contest or refute, *see* Def.'s Reply at 9. *Compare* Pls.' Cross-Mot. at 13 ("[N]owhere does Defendant allege that Taylor's statement is <u>not</u> final."), *with* Def.'s Reply at 9. Because Taylor's statement "decrees policy[ and] signals no interest in employee reactions[, it] is neither predecisional nor deliberative, [and Defendant] cannot withhold [it] under the deliberative-process privilege." *Am. Immigr. Council v. DHS*, 905 F. Supp. 2d 206, 219 (D.D.C. 2012).

*Finally*, with respect to Bates pages 2644–86, Defendant's argument in support of its withholdings is incomprehensible. *See* Def.'s Reply at 9. In Bates pages 2644–86, Townsend Decl. Ex. T, Defendant withholds an email from Leen in which he appears to instruct DOL staff to publish a series of FAQs about the Proposed Rule on DOL's website—a page to which DOL can direct the public and the press when confronted with questions about the Rule. *See id.* at Bates pages 2654, 2663–69 (showing that hours after Public Affairs received BuzzFeed's question on October 4, 2018, OFCCP published explanatory materials regarding the Proposed Rule). Public Affairs thanks OFCCP for posting the FAQs, *see id*. at Bates page 2684, marking the end of that discussion. Thus, the record demonstrates that Leen's directive to issue the FAQs is not predecisional. Rather than address this, Defendant asserts that "the give-and-take that precedes OPA's media response are [sic] protected by the deliberative process privilege," Def.'s Reply at

9—an assertion that has no application, whatsoever, to the withholdings at issue. As Plaintiffs'

Cross-Motion makes clear, Plaintiffs do not challenge the withholding of draft media responses in

Bates pages 2644–86. *See* Pls.' Cross-Mot. at 13 ("Plaintiffs do not seek the 'proposed

response[.]'"). Plaintiffs <u>do</u> seek Leen's non-predecisional instructions to DOL staff regarding the

FAQs, and contrary to Defendant's claims, Plaintiffs cite ample "legal authority" in support of

their disclosure, Def.'s Reply at 9. *See* Pls.' Cross-Mot. at 14 (citing *Trea Senior Citizens League

v. Dep't of State*, 923 F. Supp. 2d 55, 69 (D.D.C. 2013); *Coastal States*, 617 F.2d at 868)).

Accordingly, summary judgment as to these records should be entered in Plaintiffs' favor.

   C.   <u>Defendant is withholding records that are neither deliberative nor predecisional.</u>

   *First*, in Bates pages 3268–73,[11] Defendant has withheld a statement by Leen about how

"the subject of reasonable accommodation is very important to" him. Townsend Decl. Ex. O

("Ensuring reasonable accommodations is a key priority for me[.]"). Leen asks a colleague to

"[p]lease let the [regional directors] know" of this priority, *see id.* This record does not reflect any

deliberative process, despite Defendant's attempt to now characterize it as "pertaining to an idea

that OFCCP Director sought to explore with the staff." Suppl. Bickerstaffe Decl. ¶ 18. *Center for

Public Integrity v. Department of Defense* is instructive. There, the agency argued that records

were "deliberative" because they were intended to "focus[] the Deputy Secretary of Defense's

attention," which the agency claimed "is itself advice [that] mak[es] recommendations on what

should be prioritized." No. CV 19-3265 (CKK), 2020 WL 4530596, at *3 (D.D.C. Aug. 6, 2020)

(cleaned up). But the court found that was insufficient to establish "that the withheld information

is deliberative as opposed to factual." *Id.* The same is true here. This record does not play "a

---

[11]   Plaintiffs do not challenge Defendant's withholding of the bottom portion of this email thread, *i.e.*, the redacted content of Keir Bickerstaffe's email, which Defendant has withheld under the attorney-client privilege.

direct part of [a] deliberative process," *Vaughn*, 523 F.2d at 1143–44. Further, it is not predecisional. Leen's directive to "let the [regional directors]"—his subordinates—"know" his position on religious accommodations, Townsend Decl. Ex. O, makes clear the record is "likely to contain instructions to staff explaining the reasons for a decision already made," *Defs. of Wildlife v. Dep't of Agric.*, 311 F. Supp. 2d 44, 59 (D.D.C. 2004) (quoting *Coastal States*, 617 F.2d at 868), which falls outside the scope of the privilege. Defendant's description of the redacted information as concerning "what steps needed to be taken" confirms as much. Suppl. Bickerstaffe Decl. ¶ 18.

*Second*, in Bates pages 4001–06,[12] Defendant has withheld another directive from Leen in which he requests that Public Affairs provide specific language to a Bloomberg Law reporter. Townsend Decl. Ex. U ("Please put the following[.]"). The withheld portions of these records are neither predecisional nor deliberative. *See* Def.'s Reply at 10. Bates pages 4001–06 contain language prepared "for actual use in making a public statement[,] disqualif[ying it] from [the] exemption because [it] ha[s] become final rather than deliberative." *Ecological Rights Found. v. EPA*, No. CV 19-980 (BAH), 2021 WL 535725, at *17 (D.D.C. Feb. 13, 2021). Instead of confronting this fact, Defendant asserts that Public Affairs "is the final decisionmaker for matters involving public engagement," and Leen's statement is "not necessarily reflective of the actual response that OPA sent to Bloomberg Law." Suppl. Bickerstaffe Decl. ¶ 19. However, it is of little moment that Public Affairs might be the "final arbiter," Def.'s Reply at 7, because "the question is . . . whether [Defendant's] reasoning or conclusions have become the agency's operative view." *Am. C.L. Union*, 90 F. Supp. 3d at 218. As this Court has explained:

> When an agency employee who is separated by multiple levels of review from the ultimate decisionmaker . . . sends an email to a colleague raising questions about a proposal in its early stages of review . . . the agency can safely assume that the

---

[12]     Plaintiffs challenge only the redaction of the portion following "Please put the following[.]"

email was not adopted by the agency . . . . On the other end of spectrum, a memorandum prepared for the decisionmaker's signature . . . that contains no edits or marginalia might reasonably invite further inquiry as to whether [it] constituted, as a matter substance if not form, the operative agency decision or policy.

*100Reporters v. Dep't of State*, 602 F. Supp. 3d 41, 63 (D.D.C. 2022) (Moss, J.). Here, OFCCP's

<u>director</u> provided a statement to Public Affairs embodying the agency's established policy—

rendering it neither deliberative nor predecisional.

*Third*, Defendant is withholding purely factual, retrospective information from Bates pages

578–86, 593–98, 613–16, and 621–55,[13] described as correspondence "regarding an inquiry from

a media organization into instances in which OFCCP has . . . refer[red] a case . . . to the Department

of Justice [] for litigation."  Bickerstaffe Decl., ECF No. 30-3, ¶ 7.q.  The agency defends

withholding this information in a single footnote, Def.'s Reply at 10–11 n.1, which is insufficient.[14]

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("[A]rguments

raised in footnotes are not preserved.").  Moreover, the Supplemental Bickerstaffe Declaration,

which does address these records, <u>specifically</u> states that they "reflect[ ] the steps" Defendant "took

to determine the total volume of cases that were referred to DOJ."  Suppl. Bickerstaffe Decl. ¶ 20.

That makes sense; the reporter's questions are of a factual nature, *see* Townsend Decl. Ex. A

(noting the reporter's questions, *e.g.*, how many EO 11246 complaints DOL refers; how many

complaints DOL handles; what type of discrimination was alleged therein).  It is unsurprising that

this information merely documents and tallies past decisions "instead of searching out new

policies."  *Am. Immigr. Council*, 905 F. Supp. 2d at 219.  And "[b]ecause [it] is neither

---

[13]     Portions of these records are withheld under a claim of the attorney-client privilege, discussed *infra.*

[14]     Defendant references Bates pages 599–601 in defense of its withholdings but those pages are not at issue.  *See* Pls.' Appendix A, ECF No. 31-9.  Defendant also appears to wrongly attribute a quote to Plaintiffs.  *See* Def.'s Reply at 10–11 n.1 (erroneously claiming that Plaintiffs "characterized" the relevant email discussion as "cut-and-dried").

predecisional nor deliberative, it cannot be withheld under Exemption 5." *Id.* Summary judgment as to these records, too, should be entered for Plaintiffs.

D. <u>Defendant is not permitted to withhold secret law</u>.

In Bates pages 2252–66, 2275, and 3730–31, Defendant has withheld OFCCP's proposed response to a group of contractors that sought clarification about the Rule—specifically, how it permits religious organizations to prefer employees of a certain faith without engaging in discrimination. *See* Townsend Decl. Exs. K, M, Q. In its Reply, Defendant states, bizarrely, that "the deliberative process privilege covers deliberations about how to respond to press inquiries regarding a law enforcement initiative." Def.'s Reply at 13. That is neither here nor there. In these records, OFCCP provides guidance to contractors who require it so they can comply with the Rule. *See* Pls.' Cross-Mot. at 18 (describing that in Bates pages 2252–66, 2275, and 3730–31, OFCCP personnel discuss how in order to "be useful" to the contractors, their guidance "would have to include examples" of a "concrete" nature).[15] And with respect to Bates pages 4024–26[16]— DOL is asked about the application of the Rule, including how it applies when "a contractor say[s] he holds a sincere religious belief in not hiring gay employees" and whether "religious recusals will be given deference over . . . Executive Order 13672, which prohibits discrimination in hiring by federal contractors[.]" Townsend Decl. Ex. W. Leen provided a response to that inquiry that was <u>explicitly</u> "approv[ed]" by Public Affairs. *Id.* Defendant's attempt to paint the withheld email as "back-and-forth discussions," Suppl. Bickerstaffe Decl. ¶ 22, thus fails on its face; the "approv[ed]" statement reflects "what the [agency] believes the law to be," *Tax Analysts v. IRS*,

---

[15]    Indeed, Defendant has heeded this very logic with respect to Bates pages 2151–58 and 3768—previously discussed in this section of Plaintiffs' Cross-Motion—and re-released without redactions to Plaintiffs on March 28, 2023.

[16]    Plaintiffs challenge only the Exemption 5 redaction on page 4024.

117 F.3d 607, 618 (D.C. Cir. 1997), which "the public can only be enlightened by knowing," *id*.

Accordingly, summary judgment as to these records should be entered for Plaintiffs.

E.    Defendant's withholding of draft responses to non-profit organizations improperly
      stretches the limit of FOIA Exemption 5.

Defendant is withholding five records that do not fall within the scope of the deliberative

process privilege because they consist of proposed responses to non-profits.  Bates pages 331–36,

1266, 2440, 2586–91, 2071–77,[17] 3703, and 3739 are withheld emails in which OFCCP personnel

discuss an inquiry sent by the Institute for Workplace Equality, and proposed correspondence to

the National Center for Transgender Equality.[18]  These withholdings are improper.  As the court

in *People for Ethical Treatment of Animals v. Department of Health & Human Services* stated,

"the deliberative process privilege may apply to responses to press inquiries and Congressional

inquiries, [but Defendant] cites to no case in this District, and the court is aware of none, holding

that [it] applies to responses to inquiries from non-profits."  464 F. Supp. 3d 385, 396 (D.D.C.

2020).  Instead of citing <u>any</u> law in support of its position, Defendant merely restates the general

rationale for the deliberative process privilege.  *See* Def.'s Reply at 14.  In light of Defendant's

failure to demonstrate that these records fall within the privilege's scope, and because "Exemption

5 is to be construed 'as narrowly as consistent with efficient Government operation,'" 464 F. Supp.

3d at 396 (citation omitted), summary judgment as to these records should be entered for Plaintiffs.

**II.    Defendant is improperly withholding records under the attorney-client privilege.**

As a preliminary matter, Defendant wrongly argues that Plaintiffs are "attempt[ing]

improperly to raise Defendant's burden" to demonstrate that withheld material is attorney-client

---

[17]    Plaintiffs do not challenge the withholding of any portions of these pages withheld under
a claim of attorney-client privilege.
[18]    *See* ECF No. 30-4, at 2–3, 16, 27–28, 36–37, 68–69.

privileged. Def.'s Reply at 16. Not so. The "primary purpose" test is the D.C. Circuit's test for determining whether the attorney-client privilege applies to a given record. *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759–60 (D.C. Cir. 2014) (explaining primary purpose test); *In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007) (same). Thus, in the FOIA context, "to invoke the privilege, [Defendant] must establish that securing legal advice was a 'primary purpose' of the agency's communication." *Cause of Action Inst. v. Dep't of Justice*, 330 F. Supp. 3d 336, 347 (D.D.C. 2018) (citation omitted); *see also Leach v. Yellen*, No. CV 18-3075 (JEB), 2022 WL 2643536, at *2 (D.D.C. July 8, 2022) ("Courts in this circuit . . . ask[] 'whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communication.'" (citation omitted)). Defendant's assertions to the contrary are baseless and should be rejected.

*First*, in Bates pages 505–23, and Doc. Nos. 116–17,[19] Defendant continues to improperly withhold portions of emails pertaining to an inquiry from Senator Lankford.[20] Townsend Decl. Exs. B, G. Oddly, Defendant claims it has "only withheld one sentence" from these documents, "as well as one sentence from Bates No. 511." Def.'s Reply at 16; Suppl. Bickerstaffe Decl. ¶ 25. However, there are numerous redactions present. Townsend Decl. Ex. B. To the extent Defendant means that only "one sentence" on the indicated pages was withheld pursuant to a claim of the attorney-client privilege, it has failed to distinguish that lone redaction from its other withholdings. *Compare, e.g.*, Bates page 520, which has multiple redactions pursuant to Exemption 5, *with* Def.'s Updated Vaughn, ECF No. 38-2, at 8 (entry for Bates page 520), which indicates these withholdings are predicated on both the attorney-client and deliberative process privileges.

---

[19]     *See* ECF No. 36-6, at 5.
[20]     Portions of this email thread also were withheld under the deliberative process privilege. *See* Def.'s Updated Vaughn, ECF No. 38-2, at 5–9.

Notably, Defendant fails the primary purpose test as to these redactions. Indeed, Defendant concedes, as it must, that this thread does not contain any "formal requests for legal advice," but rather served merely to "loop[]" in CRLM attorneys. Def.'s Reply at 16–17. And Defendant's reliance on generalities is unavailing given that it is Defendant's "burden to show that this *particular* communication involved a request for legal advice." *Cause of Action Inst.*, 330 F. Supp. 3d at 348. For instance, Defendant indicates that "CRLM and OFCCP routinely engage in back-and-forth discussion regarding various issues that may arise," Def.'s Reply at 16–17, but Defendant does not show that CRLM's role with respect to "this particular communication" was to provide legal counsel. *See Cause of Action Inst.*, 330 F. Supp. 3d at 348.

In any event, it is clear that at least some of the redactions in this email thread are untenable because their confidentiality has not been maintained. *See Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 154 (D.D.C. 2012) (confidentiality is a "fundamental prerequisite" to assertion of attorney-client privilege (quoting *Coastal States*, 617 F.2d at 863)). For example, in Doc. No. 116, an email sent by Deputy Associate Solicitor Consuela Pinto "looping" in Keir Bickerstaffe, Defendant previously disclosed the following sentence: "Keir - Kelly's email below should refer to the U.S. Attorney General's religious liberty guidance." Townsend Decl. Ex. G at 1. Yet in another copy of the same email, at Bates page 511, Defendant continues to withhold that sentence. Townsend Decl. Ex. B at 7. Similarly, at multiple points in the thread, Defendant disclosed the following sentence in an email sent by Kelley Smith: "Craig will be working on a revised response to the attached Lankford letter." *Id.* at Bates pages 505, 509, 511, 513. Defendant withholds this same sentence elsewhere. *Id.* at Bates pages 518, 520.

Defendant's attempt to reframe the email thread as "part of a larger legal review of how OFCCP should respond to inquiries from Senator Lankford's office" is unavailing. Def.'s Reply

at 16; *see also Jordan v. Dep't of Labor*, 308 F. Supp. 3d 24, 43 (D.D.C. 2018), *aff'd*, No. 18-5128, 2018 WL 5819393 (D.C. Cir. Oct. 19, 2018) (rejecting that attorney-client privilege applied to email sent to counsel "as part of . . . broader efforts to address a legal issue"). In support of that characterization, Defendant points to two released communications of questionable (at best) relevance, beyond the mere fact that they both relate to Senator Lankford. *See* Suppl. Bickerstaffe Decl. Ex. 8, ECF 36-5, at 18. The first communication, Bates page 775, like the withheld email thread, contains no explicit request for legal advice, but welcomes "proposed edits" from CRLM attorneys to a letter. *Id.* The second, Bates page 1309, not only post-dates the contested email thread by more than a month, but seemingly pertains to a separate matter entirely, *i.e.*, a "Meeting Set Up by Senator Lankford's Staff," per its subject. *Id.* at 20. As in *Cause of Action*, Defendant has "only reveal[ed] coordination" between OFCCP and CRLM at various points, but has failed to "establish that the purpose of this communication was legal in nature." 330 F. Supp. 3d at 348.

<u>Second</u>, in Bates pages 2985–3020, Defendant has withheld a communication from Leen "that was sent to three CRLM attorneys and one OFCCP employee . . . regarding factors that could be considered when reviewing various documents."[21] Def.'s Reply at 17. Defendant, again, <u>concedes</u> that the thread does not "expressly contain[] a formal request for legal advice." *Id.* Instead, Defendant suggests that this Court can conclude that "OFCCP was seeking legal advice by including CRLM attorneys on the email chain." *Id.* Similarly, Defendant posits that the fact an attorney was "carbon copied on an email or notified about an issue" is evidence that supports application of the privilege. Suppl. Bickerstaffe Decl. ¶ 28. But "the mere fact that an attorney is listed as a recipient or author does <u>not</u> make a document protected under this privilege." *Vento v.*

---

[21]     Portions of this email exchange also were withheld under the deliberative process privilege. *See* ECF No. 30-4, at 43–46.

*IRS*, 714 F. Supp. 2d 137, 151 (D.D.C. 2010) (emphasis added). Defendant's original Vaughn provided little to no information about CRLM attorneys' actual role with respect to these documents. ECF No. 30-4, at 43–46. Defendant's new Vaughn now suggests that "OFCCP requested that CRLM review [them] for legal sufficiency." ECF No. 38-2, at 61–70. But Defendant does not point to anything in the email thread that would support this newfound claim— likely because, as Defendant concedes, it does not contain any request for legal counsel. *See supra.* Instead, Defendant cites CRLM's offer to "take [the document] back and try to address Craig's comments." Suppl. Bickerstaffe Decl. ¶ 26. But this offer—nestled in the fray of a thread in which lawyers and non-lawyers alike are editing a document—does not constitute the "detailed and specific information" necessary to show "this *particular* communication involved a request for legal advice." *Cause of Action Inst.*, 330 F. Supp. 3d at 347–48 (citation omitted).

*Third*, at Bates pages 581–86, 593, 621, and 643, Defendant has withheld emails regarding a BuzzFeed reporter's request for information about cases OFCCP referred to DOJ. Townsend Decl. Ex. A. The withheld information was "background" which "might be helpful" for a colleague to answer a reporter's questions. *Id.* (Bates page 581). Defendant now characterizes the withheld information as "communications from CRLM attorneys to OFCCP staff regarding its enforcement practices," including "legal advice regarding factors OFCCP considers in connection with seeking to disbar a contractor and/or to refer cases to DOJ." Suppl. Bickerstaffe Decl. ¶ 27. According to Defendant, "[s]uch information encompasses strategies that OFCCP utilizes in order to ensure compliance with its laws, rules, and regulation." Def.'s Reply at 18–19. But Defendant has not explained why this withheld background material about DOL's enforcement practices constitutes "legal advice" as opposed to "neutral, objective analys[i]s" similar to what "might be found in an agency manual," which does not fall within the scope of the attorney-client privilege,

even if delivered by an attorney. *Coastal States*, 617 F.2d at 863; *see also Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 146 (D.D.C. 2013) (finding attorney-client privilege did not apply to records concerning "the implementation of an agency policy").

*Fourth*, in Bates page 3350, Defendant has withheld a "summary of verbal communication" between a non-attorney and an attorney within CRLM "regarding strategy for discussing the talking points during a meeting." ECF No. 38-2 at 87. Defendant describes the communication as "legal advice from the attorney regarding how best to approach the meeting and weighed into OFCCP's consideration about how to solicit feedback from employees and present this important topic." *Id.* Again, Defendant has not explained how a communication regarding "strategy" as to "how best to approach" a meeting can constitute legal advice. The attorney-client privilege "does not extend to a government attorney's advice on political, strategic, or policy issues, valuable as it may be." *Cause of Action Inst.*, 330 F. Supp. 3d at 347 (cleaned up) (citation omitted).

*Finally*, in Bates pages 3789–95, Defendant has withheld emails concerning the posting of certain data to OFCCP's website.[22] Townsend Decl. Ex. GG. Once more, Defendant fails to provide sufficiently detailed information to support its claim that the privilege applies. Defendant's original Vaughn provided no information as to the attorneys' role. *See* ECF No. 30-4, at 70. Defendant's new Vaughn now describes the withheld information as "facts provided to DOL attorneys that assisted the attorneys with making a determination regarding whether the relevant information could be disclosed." ECF No. 38-2, at 103. Defendant now argues this information is privileged "because it reflect [sic] internal legal advice provided by attorneys

---

[22] Portions of this email exchange were also withheld pursuant to a claim of the deliberative process privilege. *See* Def.'s Updated Vaughn, ECF No. 38-2, at 103.

regarding a legal issue that was under review." *Id.* But Defendant "must provide more than the talismanic adjective 'legal' and the conclusory phrase 'attorney client privileged' to establish that a document was sent for the purpose of conveying legal advice." *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 309 (D.D.C. 2013). For these reasons, summary judgment as to Defendant's redactions pursuant to a claim of the attorney-client privilege should be granted in Plaintiffs' favor.

**III.  Defendant has not demonstrated that it is reasonably foreseeable that harm will result from disclosure of the information it has withheld under Exemption 5.**

    A.    <u>No harm to future agency decisionmaking will result from disclosure.</u>

Defendant has not submitted any additional evidence to support its claim that it is reasonably foreseeable that harm will flow from disclosure of the instant records. And, not only does Defendant fail to address several of Plaintiffs' arguments as to the non-existence of any possible future harm, but also it misrepresents the state of the law on this issue.

As Plaintiffs explained in their Cross-Motion, the foreseeable harm standard has not been—and cannot be—met as to the withholdings at issue because, among other things, they pertain to a rule that has been superseded. *See* Regulations.gov, *Rescission of Implementing Legal Requirements Regarding the Equal Opportunity Clause's Religious Exemption Rule*, *supra*; Pls.' SMF, ECF No. 31-2, ¶ 21. The disclosure of records about the Rule's promulgation or public reaction to it thus cannot reasonably be anticipated to "impede those <u>same</u> agency deliberations going forward," *Reporters Comm.*, 3 F.4th at 370 (emphasis added).

In its Reply, Defendant claims that "Congress has already contemplated and designated when information that is withheld pursuant to the deliberative process privilege should be released because it is historical" in the "sunset provision on the deliberative process privilege." Def.'s Reply at 20 (referencing Pub. L. No. 114-185, 130 Stat. 538 (2016), which provides that the privilege does not apply to records older than 25 years). But that is a separate legal inquiry.

Defendant cannot rely on the FOIA Improvement Act's sunset provision in order to evade compliance with the foreseeable harm provision—the latter of which applies <u>regardless</u> of a record's age. By subjecting deliberative process privilege claims to both a 25-year sunset and the foreseeable harm standard, Congress made clear that records younger than 25 years must be released if an agency cannot show it is reasonably foreseeable that disclosure will harm an interest sought to be protected by the privilege; the passage of time is a relevant factor in that analysis. *See Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 105 (D.D.C. 2019). Contemporaneous statements by bi-partisan sponsors of the FOIA Improvement Act made clear that the imposition of a sunset did <u>not</u> create a presumption of harm for younger records. For instance, Senator Cornyn explained that the sunset provision "should not be read to raise an inference that the deliberative process privilege is somehow heightened or strengthened as a basis for withholding before the 25-year sunset." 162 Cong. Rec. S1496 (daily ed. Mar. 15, 2016). Similarly, Senator Leahy stated that the "new sunset should not form the basis for agencies to argue that the deliberative process privilege somehow has heightened protection before the 25-year sunset takes effect." *Id.*

These principles are especially salient here, where the Rule that is the subject of the records at issue does not even constitute current policy. *See Nat'l Day Laborer Org. Network*, 486 F. Supp. 3d at 709 ("Defendants are directed to submit an affidavit explaining in more detail the harm that would come from the release of these draft forms for the <u>discontinued</u> [] program which are, at this point, arguably historical records." (emphasis added)).

         i.     *Disclosure of the "Category H" records will not harm future DOL decisionmaking.*

As discussed in Plaintiffs' Cross-Motion, Defendant's "Category H" withholdings are impermissible under FOIA's foreseeable harm provision. *See* Bickerstaffe Decl., ECF No. 30-3, ¶ 7.h. All that Defendant asserts is that disclosure of these records would cause harm "by chilling

necessary collaboration within the agency and with its counsel to ensure that all issues related to the Directive and guidance were discussed, evaluated, and that the final published guidance on the topic was accurate, defensible, and helpful to the federal contractors[.]" *Id*. Defendant has not supplemented this generic claim, *see* Def.'s Reply; Suppl. Bickerstaffe Decl., nor could it. Any collaboration "related to the Directive" has long been completed, and Defendant's only allegation of purported "harm" is <u>entirely</u> backward-looking. *Compare id.*, *with Reporters Comm.*, 3 F.4th at 370 (requiring agencies to explain "why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations <u>going</u> <u>forward</u>" (emphasis added)). That Defendant has made no attempt to supplement its showing with respect to its "Category H" withholdings in light of caselaw requiring agencies to "explain in a 'focused and concrete way' how disclosure of the . . . documents will impede <u>future</u> agency deliberations," *Reporters Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 114 (D.D.C. 2021), *appeal dismissed*, No. 21-5293, 2022 WL 801357 (D.C. Cir. Mar. 15, 2022) (emphasis added) (citation omitted), is telling. Summary judgment as to Defendant's "Category H" records should be entered in Plaintiffs' favor.

> ii. *Disclosure of records involving former senior leadership will not harm future DOL decisionmaking.*

Defendant claims that disclosure of these records would "chill agency staff and management from full and robust deliberation" about various issues, and "prevent managers from requesting" relevant information from their staff, Bickerstaffe Decl., ECF No. 30-3, ¶¶ 7.p–q. As Plaintiffs' Cross-Motion explains, Defendant's position fails to account for the fact that said management is no longer with the agency. Pls.' Cross-Mot. at 30–31. Defendant does not so much as address this point, let alone rebut it. *See Texas v. United States*, 798 F.3d at 1110 ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the

court may treat the unaddressed arguments as conceded" (citation omitted)).  Because the leadership that initiated a review of religious exemptions and oversaw issuance of the Rule—Craig Leen and Marika Litras, occupying roles of director and deputy director of OFCCP, respectively—have left the agency, Pls.' SMF, ECF No. 31-2, ¶¶ 24–25, the communications of Leen, included in Bates pages 2272, 2644–86, 3268–73, 3276, 3297, 3309–22, 3993–98, and 4001–06, and the communications of Litras, included in Bates pages 578–93, and 3703, must be disclosed.[23]

B.     Defendant's allegations of harm purportedly resulting from release of certain records in "Categories" A, B, C, E, I, K, Q, and V are impermissibly perfunctory.

Defendant's attempt to satisfy FOIA's foreseeable harm standard with respect to these records remains wholly perfunctory.  For instance, nestled between verbatim restatements of the previously filed Bickerstaffe Declaration, Defendant's Reply posits that "[p]erhaps disclosure alone of this information would suffice to show foreseeable harm," Def.'s Reply at 21 (discussing its "Category C" withholdings).  This general musing does not qualify as "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  *Reporters Comm.*, 3 F.4th at 370.

Plaintiffs emphasized in their Cross-Motion that as to Defendant's "Category K" withholdings, Bickerstaffe Decl., ECF No. 30-3, ¶ 7.k, Defendant averred that "[d]isclosure of this information would foreseeably harm OFCCP by chilling its ability to share initial draft responses for comment," *id*., without saying anything about why these particular drafts, in light of their particular content, warrant withholding.  *Compare id.*, *with Jud. Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 100–01 (D.D.C. 2019) (reminding agencies that in light of the foreseeable

---

[23]     Defendant released Bates pages 2151–58 and 3768, containing Litras' communications, without redactions, mid-briefing.

harm provision's "heightened standard for an agency's withholdings," they must show why "disclosure is likely to discourage frank and open dialogue as to the <u>specific withholdings</u>" at issue (emphasis added)). Defendant has not attempted to supplement that showing, because it cannot.

The same goes for Defendant's "Category V" withholdings. *See* Bickerstaffe Decl., ECF No. 30-3, ¶ 7.v. Defendant mechanically suggests that disclosure "would foreseeably harm OFCCP by chilling the candid and robust interagency review process within DOL that takes place prior to the issuance of rollout materials," *id.*; it proffers nothing —in either its opening brief or its Reply—beyond this "generalized justification" that, if deemed sufficient, would turn FOIA's foreseeable harm requirement "into a game of 'Mad Libs'" wherein a defendant "fill[s] in the blanks with the name of the agency and the things that it does." *Nat'l Pub. Radio, Inc. v. Dep't of Homeland Sec.*, No. 1:20-cv-2468-RCL, 2022 WL 4534730, at *8 (D.D.C. Sept. 28, 2022).

Defendant's showings as to its "Category B," "Category C," "Category I," and "Category Q" withholdings are similarly inadequate and make no attempt to provide any supplemental information. *Compare* Bickerstaffe Decl., ECF No. 30-3, ¶¶ 7.b, c, i, q, *with* Suppl. Bickerstaffe Decl. It is not sufficient for Defendant to mechanically claim that "[d]isclosure of this information would foreseeably harm OFCCP by chilling its ability to deliberate in writing regarding questions raised by the public about published guidance" or "chill agency staff and management from full and robust deliberation," *see id.* ¶¶ 7.i, q, without explaining how <u>these specific records</u> would do so if disclosed. *Reporters Comm.*, 3 F.4th at 370.

Finally, as to Defendant's "Category E" withholdings, and its "Category A" withholdings related to Questions for the Record, *see* Bickerstaffe Decl., ECF No. 30-3, ¶¶ 7.e, a, Defendant has just copied and pasted the Bickerstaffe Declaration into its Reply. *See* Def.'s Reply at 21. In so doing, Defendant has not satisfied its obligation "to meaningfully connect the harm of

discouraging frank dialogue to the information withheld, [without] relying on boilerplate statements to justify its withholdings." *Jud. Watch, Inc. v. Dep't of Justice*, No. 19-CV-800 (TSC), 2020 WL 5798442, at *4 (D.D.C. Sept. 29, 2020). This is because "the 'context and purpose' of the documents," even if "drafts and preliminary versions of responses not yet approved for release," "does not make 'manifest' a risk of foreseeable harm from disclosure" of emails about "how to respond to requests for information . . . from . . . Congress." *Reporters Comm.*, 567 F. Supp. 3d at 115–16.

C.    <u>No harm to attorney-client communications will result from release of the records.</u>

Assuming, *arguendo*, that the information Defendant has withheld under a claim of attorney-client privilege is subject thereto, Defendant has not met—and cannot meet—the foreseeable harm standard. While Defendant insists that disclosure would "undermine the attorney-client relationship . . . because the quintessential notion of confidentiality that employees rely on when determining they should involve their legal team in their decision-making process would be compromised," Suppl. Bickerstaffe Decl. ¶ 28, it fails, itself, to maintain the very confidentiality it alleges is so fundamental. *See supra* p. 16. Moreover, as Plaintiffs explained in their Cross-Motion, these records do not reflect attorneys providing legal advice, let alone legal advice within the context of pending or anticipated litigation—communications that lie at the core of the privilege. They are, at best, "minor communications, disclosure of which would have less dire consequences, if any." *Reporters Comm.*, 567 F. Supp. 3d at 124. Not only does Defendant not rebut this fact, but confirms it. *See supra* pp. 15–19 (noting that the records do not contain any "formal requests for legal advice"); *see also Reporters Comm.*, 567 F. Supp. 3d at 114.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

For the foregoing reasons, the Court should deny Defendant's motion for summary judgment in part and enter partial summary judgment in favor of Plaintiffs.

Dated: April 28, 2023

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
DC Bar No. 1026115
Adam A. Marshall
DC Bar No. 1029423
Gunita Singh
DC Bar No. 1601923
Shawn Musgrave
DC Bar No. 90002165
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: gsingh@rcfp.org
Email: smusgrave@rcfp.org

*Counsel for Plaintiffs*